No. 22-11325-JJ

# In the United States Court of Appeals
## for the Eleventh Circuit

ISRAEL ROSELL,
for themselves and on behalf of those similarly situated,
ROBERTO GONZALEZ,
for themselves and on behalf of those similarly situated,
*Plaintiffs-Appellants*

v.

VMSB, LLC, a Florida Limited Liability Company, d.b.a. Gianni's,
d.b.a. CASA CASUARINA,
*Defendant-Appellee*

**On Appeal from the United States District Court
for the Southern District of Florida**

**BRIEF OF PLAINTIFF-APPELLANT**

ANGELI MURTHY
ANDREW R. FRISCH
MORGAN & MORGAN, PA
8151 Peters Rd Ste 4000
Plantation, FL 33324
(954) 318-0268
AMurthy@forthepeople.com
AFrisch@ForThePeople.com

*Counsel for Plaintiffs-Appellants*

**ORAL ARGUMENT REQUESTED**

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

No. 22-11325, *Israel Rosell, et al v. VMSB, LLC*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, All Plaintiffs/Appellants and Opt-In Plaintiffs/Appellants hereby provide the following list of interested persons and/or parties who may have an interest in the outcome of this appeal:

1. Alcivar, Jose - Member of Collective

2. Ayala, Valentina - Member of Collective

3. Bekkali, Younes  - Member of Collective

4. Berger Singerman LLP, Counsel for Appellee

5. Chow, Allan - Member of Collective

6. Claude, Andre Fafard - Member of Collective

7. Faria, Daniel - Member of Collective

8. Fernandez, Roberto - Member of Collective

9. Frisch, Esq., Andrew R. - Counsel for Appellants

10. Garcia, Rocio Del Moral - Member of Collective

11. Gonzalez, Renzo A. - Member of Collective

12. Gonzalez, Richard - Member of Collective

13. Gonzalez, Roberto - Named Plaintiff/Appellant

14. Kaiser, Tracey - Member of Collective

15. Labrada, Ernesto - Member of Collective

16. Lopez, Milka - Member of Collective

17. Lyles, Sabrina - Member of Collective

18. Mamani, Felicia - Member of Collective

19. Morgan & Morgan, P.A., Counsel for Appellants

20. Murthy, Esq., Angeli - Counsel for Appellants

21. Pallais, Lorie - Member of Collective

22. Ramirez, Jhorvid - Member of Collective

23. Richter, Nestor - Member of Collective

24. Rincon-Duarte, Juan Luis - Member of Collective

25. Rincon, Juan - Member of Collective

26. Rosell, Israel - Named Plaintiff/Appellant

27. Sanchez, Eduardo Martin - Member of Collective

28. Stojanoska, Nikolina - Member of Collective

29. Stojanovski, Ljupcho - Member of Collective

30. Torres, Edwin G. - Magistrate Judge for the Southern District of Florida

31. Trowbridge, Esq., Caitlin M. - Counsel for Appellee

32. Turnbaugh, Katelyn - Member of Collective

33. Vdavenka, Piotr - Member of Collective

34. VMSB, LLC, - Defendant/Appellee

35. Williams, Kathleen M. - District Judge for the Southern District of Florida

36.Zelmanowitz, Esq., Andrew B. - Counsel for Appellee

Respectfully submitted,

/s/ Angeli Murthy
ANGELI MURTHY
ANDREW R. FRISCH
MORGAN & MORGAN, PA
8151 Peters Rd Ste 4000
Plantation, FL 33324
(954) 318-0268
AMurthy@forthepeople.com
AFrisch@ForThePeople.com

*Counsel for Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. Oral argument will benefit the Court in its consideration and understanding of the facts at bar, and the issues of statutory construction raised in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF AUTHORITIES ............................................................................ iv

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED ................................................................................... 1

STATEMENT OF THE CASE/FACTS ............................................................ 2

     A.    PROCEDURAL HISTORY ................................................................. 2

     B.    APPELLANTS, AND THEIR FELLOW SERVERS AND BARTENDERS WERE PAID AN HOURLY WAGE BELOW THE REGULAR MINIMMUM WAGE ............................................... 3

     C.    WHILE APPELLEE PURPORTED TO CHARGE CERTAIN AMOUNTS AS A "SERVICE CHARGE" TO ITS CUSTOMERS, THAT CHARGE WAS NOT MANDATORY ................................... 3

     D.    APPELLEE SWORE UNDER PENALTY OF PERJURY ON ITS FEDERAL TAX RETURNS THAT AMOUNTS COLLECTED AS "SERVICE CHARGES" WERE EMPLOYEE TIPS, TOOK A *CREDIT* FOR SAME AS TIPS, AND TREATED "SERVICE CHARGES" THE SAME AS TIPS ON EMPLOYEE PAYSTUBS .... 7

     E.    APPELLEE RETAINED A PORTION OF THE "SERVICE CHARGES" FOR ITSELF, THE "HOUSE" ....................................... 8

SUMMARY OF ARGUMENT ......................................................................... 9

ARGUMENT ............................................................................................... 11

A.    Legal Standard ...................................................................... 11

B.    The District Court's Decision to Grant Summary Judgment for Appellee Was Erroneous on the Factual Record Before It ............... 12

    i.    The Purported Service Charges Were Not Mandatory .............. 12

    a.    The Charge Was Negotiable, and Was Negotiate Hundreds of Times ...................................................................... 12

    b.    Whether Appellee Initially Added the Charge To The Bill or Physically Inputted Its Removal, Is Irrelevant, As Most Suggested Gratuities Are Initially Added ................................. 14

    c.    The District Court Improperly Made Factual Inferences In Appellant's Favor When it Determined, As A Matter of Law, The Reasons That Appellee Reduced or Removed Its Service Charges ...................................................................... 18

    d.    Canons of Statutory Construction Require that The Applicable Regulations Be Harmonized And That Each Term Be Given Meaning, Precluding Summary Judgment for Appellee ........... 20

    ii.    Appellee Swore Under Penalty of Perjury, To Its Substantial Benefit, That The Amounts At Issue Are Tips, *Not* Gross Receipts, and Is Estopped From Claiming Otherwise .............. 23

    iii.    *Compere* Is Distinguishable, And Does Not Control the Outcome Here.............................................................. 28

    iv.    The Purported "Service Charges" at Issue Did Not Become Part of "Gross Receipts" Merely Through Use of Appellee's Point of Sale System, And Thus May Not Be Used To Satisfy Minimum Wage Obligations ................................................................ 32

CONCLUSION ................................................................. 36

CERTIFICATE OF COMPLIANCE....................................... 38

CERTIFICATE OF SERVICE ............................................. 39

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Osaka Japan Rest., Inc.*,
   No. CV 17-1018, 2018 WL 3397337 (E.D. Pa. July 12, 2018)...........................35

*Alban v. 2K Clevelander LLC*,
   2018 WL 4859068 (S.D. Fla. Aug. 28, 2018) ......................................... 12, 14, 29

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)........................................11

*Barcellona v. Tiffany Eng. Pub, Inc.*,
   597 F.2d 464 (5th Cir. 1979) ................................................................................35

*Birdwell v. City of Gadsen, Ala.*,
   970 F.2d 802 (11th Cir. 1992) ..............................................................................19

*Black & Decker Corp. v. Comm'r*,
   986 F.2d 60 (4th Cir. 1993) ................................................................................. 21

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir.1981) (*en banc*)............................................................21

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979)...............................................................................................21

*Compere v. Nusret Miami, LLC, et al.*,
   28 F.4th 1180 (11th Cir. 2022) .................................................................. *passim*

*Fernandez v. Trees, Inc.*,
   961 F.3d 1148 (11th Cir. 2020) ............................................................................11

iv

*Gardner v. Country Club, Inc.*,
No. 4:13-CV-03399-BHH, 2015 WL 7783556 (D.S.C. Dec. 3, 2015)...............34

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)...............................................................................21

*Hart v. Rick's Cabaret Int'l, Inc.*
967 F. Supp. 2d 901 (S.D.N.Y. 2013) ........................................... 24, 33

*In re Robb*,
23 F.3d 895 (4th Cir.1994) ...................................................................26

*Klinedinst v. Swift Invs., Inc.*,
260 F.3d 1251 (11th Cir. 2001) ............................................................18

*\*Lalic v. CG RYC, LLC*,
2018 WL 5098983 (S.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 5098883 (S.D. Fla. Aug. 29, 2018) ............................... 12, 30

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..............................................................................18

*Matter of Davidson*,
947 F.2d 1294 (5th Cir. 1991) ..............................................................26

*McKnight v. D. Houston, Inc.*,
756 F. Supp. 2d 794 (S.D. Tex. 2010) ..................................................35

*Montano v. Montrose Rest. Assocs., Inc.*,
800 F.3d 186 (5th Cir. 2015) ....................................................... 16, 17

*Morgan v. Fam. Dollar Stores, Inc.*,
551 F.3d 1233 (11th Cir. 2008) .................................................... 16, 17

*Myers v. Copper Cellar Corp.*,
  192 F.3d 546 (6th Cir. 1999) ..................................................................35

*Nascembeni v. Quayside Place Partners, LLP*,
  2010 WL 2351467 (S.D. Fla. June 11, 2010)......................................... 13, 19, 30

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................ 24, 25

*O'Shannessy v. Doll*,
  566 F. Supp. 2d 486 (E.D. Va. 2008) ....................................................21

*Payne v. Panama Canal Co.*,
  607 F.2d 155 (5th Cir. 1979) ...............................................................21

*Prusin v. Canton's Pearls, LLC*,
  2017 WL 5126156 (D. Md. Nov. 6, 2017) ............................................. 24, 33, 34

*Reich v. Priba Corp.*,
  890 F. Supp. 586 (N.D. Tex. 1995) .......................................................33

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) .................................................................26

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (11th Cir. 2013) ............................................................ 16, 17

*Shehata v. Sobe Miami, LLC*,
  2018 WL 2995603 (S.D. Fla. June 14, 2018).........................................12

*Simon v. Safelite Glass Corp.*,
  128 F.3d 68 (2d Cir. 1997) ..................................................................26

*Slater v. United States Steel Corp.*,
  871 F.3d 1174 (11th Cir. 2017) ..................................................... 25, 27

*\*Soliman v. SOBE Miami, LLC*,
  312 F. Supp. 3d 1344 (S.D. Fla. 2018) ........................................ *passim*

*Virgin v. Escalante-Black Diamond Golf Club, LLC*,
  2014 WL 12591472 (M.D. Fla. Aug. 4, 2014) ....................................... 13, 16, 17

*Wai Man Tom v. Hosp. Ventures LLC*,
  980 F.3d 1027 (4th Cir. 2020) ...............................................17

**Statutes**

28 U.S.C. §1291 ....................................................................1

29 U.S.C. § 203(m)(2)(B) ...........................................................35

**Rules**

Fed. R. Civ. P. 56(a)...............................................................11

**Regulations**

29 C.F.R. § 531.52 ............................................................... 20, 22

29 C.F.R. § 531.55 ............................................................... 22, 30

29 C.F.R. § 531.55(a)................................................................ 22

29 C.F.R. § 778.310 ............................................................... 15, 17

29 C.F.R. § 778.502 ............................................................... 15, 17

## JURISDICTIONAL STATMENT

The jurisdiction of the District Court over this controversy is thus proper pursuant to 28 U.S.C. §1291, because the grant of Appellee's Motion for Summary Judgment is a final order disposing of all claims before the District Court. The District Court granted the Motion for Summary Judgment by Order dated March 28, 2022 [Doc. 165], and Appellant timely appealed on April 22, 2022 [Doc. 168]. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. The FLSA and its implementing regulations prohibit an employer from sharing in employee tips. A mandatory service charge is not a tip, and an employer may share therein. Here, Appellee claimed to utilize a service charge; however, the amount was not mandatory, the charge was removed in hundreds of instances at customers' direction, and Appellee admitted that the service charge was removed in all instances where a customer directed its removal. Under these circumstances, did the purported service charge operate as a "suggested" gratuity, rather than a mandatory service charge, such that Appellee's retention of a portion of the pooled charges was unlawful, or, at the very least, is the issue of whether the charge was mandatory or suggested one for a jury to decide?

    a. Yes.

2. Appellee represented under penalty of perjury that the amounts at issue were tips, and not a service charge, and reaped a handsome benefit from that classification in the form of drastically reduced taxes. Is Appellee estopped from now taking the opposite position when expedient to avoid the legal consequence of its prior classification?

    a. Yes.

## STATEMENT OF THE CASE/FACTS

## A.   <u>PROCEDURAL HISTORY</u>

Appellants, Israel Rosell and Roberto Gonzalez, for themselves and on behalf of those similarly situated ("Appellants"), filed a complaint alleging, that VMSB, LLC, d/b/a GIANNI'S and d/b/a CASA CASUARINA ("Appellee") failed to pay proper minimum wage and overtime due to *inter alia* its practice of improperly retaining employee tips. Doc. 1; Doc. 68 (amended complaint adding Florida Minimum Wage Act claim).

During the pendency of the Parties' cross-motions for summary judgment, the Parties settled the overtime portion of the action (Count III), leaving only the question of whether, as a matter of law, the amounts Appellee admittedly retained are employee tips or whether they are service charges. If they are tips, they are employee property and Appellee was not permitted to retain them, and likewise they could not be used to satisfy its minimum wage obligations. If they are mandatory service

2

charges, and part of Appellee's gross receipts, they could be used to satisfy those obligations, because they belong to the employer in the first instance.

Magistrate Judge Torres issued a Report and Recommendation ("R&R") finding that the amounts at issue constituted service charges, and thus could be used to satisfy the entirety of Appellee's minimum wage obligations. Doc. 161. Appellant filed objections to the R&R, but the District Court adopted the R&R without limitation. Doc. 165. This appeal timely followed.

## B. APPELLANTS, AND THEIR FELLOW SERVERS AND BARTENDERS WERE PAID AN HOURLY WAGE BELOW THE <u>REGULAR MINIMUM WAGE</u>.

1. Appellants, and other servers and bartenders employed by Appellee, were paid at a direct wage of $5.65 or less per hour as their hourly rate. *See* Deposition of corporate representative Salim Mounayyer, Doc. 116-2, at pp. 17:7-18:13; Deposition of corporate representative Daniel Tamir, Doc. 116-1, at pp. 37:24-38:14. The direct wage paid was less than minimum wage. Doc. 116-1, at p. 89:13-19.

## C. WHILE APPELLEE PURPORTED TO CHARGE CERTAIN AMOUNTS AS A "SERVICE CHARGE" TO ITS CUSTOMERS, <u>THAT CHARGE WAS NOT MANDATORY</u>.

2. Appellee had a stated policy pursuant to which it added what it labeled as a "service charge" of between 20-22% to its customers' bills for food and beverage transactions. Doc. 116-2, at pp. 80:20-81:21.

3.  Until May 2020, Appellee used a point-of-sale system known as Toast.  Doc. 116-1, at pp. 10:13-15, 44:2-5.  The Toast system generates reports showing receipt information, which show whether or not a service charge was charged on any given transaction. *Id.* at pp. 52:1-10, 53:4-11, 54:5-12.

4.  These Toast reports were produced by Appellee and by Toast in this litigation.  Doc. 116-5.  These Toast reports were submitted below as Doc. 116-6 (2016), Doc. 116-7 (2017), Doc. 116-8 (2018), Doc. 116-9 (2019) and Doc. 116-10 (2020). Column "R" reflects the actual "service charge," or lack thereof, charged to Appellee's customers as to each transaction.  Doc. 116-1, at p. 154:5-7.

5.  In reviewing just selected, non-exhaustive examples from the Toast Report covering one six month period between July and December 2018, Appellee admitted to at least thirteen removed "service charges" from food and beverage sales. Doc. 116-1 at pp. 156:16-171:3 (referencing Doc. 116-8 for period of July 2018 to December 2018, citing non-exhaustive examples at lines 391, 1782, 2007, 2976, 4754, 4754, 5340, 6972, 7013, 8383, 9437, 9831, 12367, and 12487).

6.  The amount characterized as a "service charge" was removed from customers' bills due to customer complaints regarding service, at the

4

customers' direction. Doc. 116-1, at pp. 54:21-56:14. *See also* Doc. 116-2, at pp. 101:25-104:12

7. Appellee's "Captains" were authorized to remove the "service charge," as a matter of policy, when customer's took exception to paying all or pay of the "service charge." Doc. 116-1 at p. 48:12-18.

8. One such Captain, listed by Appellee as a witness on its initial disclosures, was Gabriel Scocco. *See id.*; *and* Doc. 116-3, Appellee's Initial Disclosures.

9. Appellants contend that the purported "service charge" was not and could not be mandatory and/or that it was collected on every customer check, because it is undisputed both that the amount had to be, and was, removed from customer checks when customers so directed. Doc. 116-1, at pp. 54:21-56:14; Doc. 116-4, at pp. 10:25-11:7; 21:19-22:18, 25:10-27:5, 64:10-22, 84:2-88:22 (as a Captain, Mr. Scocco removed "service charges" at customer direction); Doc. 116-6 to 116-11 (showing all transactions from 2016 to 2020 at Doc. 116-6 to 116-10, and showing a list of over **five hundred fifty (550)** removed or reduced "service charges" at Doc. 116-11). *See also* Doc. 116-2, at pp. 101:25-104:1.

10. Appellee confirmed that it never instructed Mr. Scocco that the service charges were mandatory and could not be removed. Doc. 116-1, at p. 158:13-24. Mr. Scocco could not recall any instance where a service

5

charge was removed from a food and beverage sale other than at a customer's behest, related to an issue with customer service. Doc. 116-4, at p. 27:1-5.

11. Appellants averred that the so-called "service charges" were "routinely" reduced or removed based on customer direction and that, whenever a customer indicated he or she did not want to pay the charge, it was removed. Doc. 123-4, at ¶¶ 3-4; Doc. 123-5, at ¶¶ 3-7; Doc. 123-6, at ¶¶ 3-4; Doc. 123-7 at pp. 53:8-55:24.

12. Servers complained about the removal of the service charges. *See, e.g.,* Doc. 123-7 at 54:18-55:10 ("I remember the first time it happened because it shocked me. It surprised me. I recall asking him why was he going to do it if it's not my fault that he didn't want to pay it and I would not make anything on the service provided. The second time it was a similar situation, and I asked the same, and I got the same response. After that, I stopped asking questions because I realized that the answer was always the same. All the servers sometimes complained about the same thing happening to them, as well.")

6

**D.    APPELLEE SWORE UNDER PENALTY OF PERJURY ON ITS FEDERAL TAX RETURNS THAT AMOUNTS COLLECTED AS "SERVICE CHARGES" WERE EMPLOYEE TIPS, TOOK A *CREDIT* FOR SAME AS TIPS, AND TREATED "SERVICE CHARGES" THE SAME AS TIPS ON EMPLOYEE PAYSTUBS.**

13.    Appellees never treated the "service charge" collected as part of the employees' regular rate of pay; rather, the restaurant reported these amounts paystubs and W-2s as "tips."  Doc. 116-1, at pp. 68:10-12, 74:9-15, 75:3-76:10, 77:12-79:9**.**  Further, Appellee listed these amounts on its federal income taxes not as income, but as tips, for which it claimed (and received) a credit.  *Id.*, 84:4-86:18, 128:10-129:21, 130:13-131:2, 133:3-14, 136:9-18.

14.    Appellee did not report any of the "service charges" as part of its gross receipts in its federal income taxes for 2016, 2017, 2018 or 2019.  Doc. 116-1, pp. 84:4-86:18, 133:3-14.

15.    Instead, Appellee took a credit for the amount of the "service charges," including such amounts with all other tips received by employees on Form-8846.  *Id.* at 84:4-86:18, 128:10-129:21, 130:13-131:2, 136:9-18.

16.    The IRS directs those filling out Form-8846 to:

Enter the **tips** received by employees for services on which you paid or incurred employer social security and Medicare taxes during the tax year. **Include tips received from customers for providing, delivering, or serving food or beverages** for consumption if tipping of employees for delivering or serving food or beverages is customary.

7

*See* IRS-Form 8846 with instruction page, Doc. 116-12 (emphasis added, exhibit highlighted).

17. Not only did Appellee treat the purported "service charges" as tips in its taxes, it also treated the amounts distributed from the purported "service charges" in an identical fashion to how it treated employee tips for purposes of employee paychecks and tax withholdings. To that end, Appellee combined amounts it acknowledges are "tips" with those it characterizes as "service charges" on employee paychecks. Doc. 116-1, at pp. 68:10-12, 74:9-15.

18. The amounts reported as employee "wages" on paychecks and employee W-2 forms consisted entirely of the direct hourly wage portion of the employees' wages – that is – the $5.65 or lower hourly rate that the servers and bartenders were paid. *Id.* at 75:3-76:10, 77:12-79:9.

**E.    APPELLEE RETAINED A PORTION OF THE "SERVICE CHARGES" FOR ITSELF, THE "HOUSE."**

19. Appellee's retained approximately 10% of the "service charges" collected for itself.  *Id.* at 61:17-62:16, 121:1-20.  As such, all of the pooled monies collected as "service charges" (and collected in the same manner that most tip pools are collected) were not distributed to tipped employees. *See id.*

8

## SUMMARY OF ARGUMENT

Ample evidence in the record supported a finding that: (1) Appellee's purported "service charge" was not "compulsory" or "mandatory; and (2) that Appellee represented under oath in sworn tax filings that the "service charges" collected were not a part of "gross receipts" but rather employee tips for which Appellee was entitled to (and took) a credit. Based on these facts, there was, at the very least, an issue of fact as to whether Appellee could lawfully retain any of these gratuities or use such gratuities earned by employees to satisfy Appellee's legal obligation to pay its employees' direct wages. The District Court thus erred when it granted summary judgment for Appellees.

Appellants provided uncontroverted testimony that whenever a customer directed that the service charge be removed or reduced, it was reduced or removed from the bill accordingly, and thus the charge was *not* mandatory, by definition. Appellee presented no evidence that any customer who directed that the service charge be removed was charged nonetheless. To the contrary, Appellee admitted that the charge was removed or reduced in all instances in which a customer directed same. There is no evidence that any customer's directive was ever denied.

 Appellee's pay scheme is indistinguishable from a restaurant tip pool in a restaurant which initially includes a "suggested" or "preferred" gratuity on each check. The charge was *not* non-negotiable or compulsory. Of course, black-letter

9

law dictates that an employer may not share in such a tip pool. Based on the record before the Court, a reasonable jury could conclude that the restaurant's policy was to remove service charges in response to customer directives. Thus, it was error to grant judgment in Appellee's favor. Applying the correct summary judgment standard, the facts presented dictated that, at a minimum, the case go to trial on the issue of whether the purported service charge was mandatory.

Moreover, Appellee is estopped from claiming that the monies at issue are not tips. While Appellant is aware of the recent holding in *Compere v. Nusret Miami, LLC, et al.*, 28 F.4th 1180 (11th Cir. 2022), finding that an employer's reporting of monies in its taxes is not necessary to finding that same constitute a service charge, that case did not determine the effect of an employer's averment under oath that the monies are tips, whereby it derived a significant benefit from that prior sworn representation.[1] Here, Appellee explicitly and expressly excluded

---

[1] Appellants maintain their disagreement with the decision that an employer need not report service charge monies as part of its gross receipts in its taxes before it can claim that those monies are service charges, rather than tips or gratuities. Reading the regulation consistently with applicable and accepted rules regarding statutory construction, it is clear that reporting of these monies in gross receipts is always required before an employer can use those monies to meet FLSA wage obligations. Only where an employer has reported these monies as part of its gross receipts for tax purposes can an employer be said to have fulfilled this obligation. No other reading would give meaning to the requirement to include monies in gross receipts in order to use those monies to satisfy wage requirements – as the only time companies are required to record an amount as "gross receipts" is in tax filings. In addition, a determination that all monies a restaurant collects are in its "gross receipts" necessarily means that every credit card tip entered into a

from and disavowed as part of its "gross receipts" the monies at issue when reporting such these amounts under penalty of perjury in tax returns. Instead, Appellees swore under oath that such amounts were employee tips for which it was entitled to a credit, and consequently received a substantial tax benefit. Where Appellee averred under oath in its tax filings that these monies were "tips" and not part of its "gross receipts," and reaped a significant financial benefit as a result, it cannot now take a contrary position, as a matter of convenience, with respect to whether it met that requirement for purposes of this regulation.

## ARGUMENT

### A. **Legal Standard**.

This Court reviews a district court's grant of a summary judgment motion *de novo,* "construing the facts and drawing all reasonable inferences in favor of the nonmoving party*." Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020). Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

company's point of sale system is part of the company's "gross receipts," a definition which would render the term without any meaning.

**B. The District Court's Decision to Grant Summary Judgment for Appellee Was Erroneous on the Factual Record Before It.**

    **i.  The Purported Service Charges Were Not Mandatory.**

        **a.  The Charge Was Negotiable, and Was Negotiated Hundreds of Times.**

It is well-established that, in order to be considered wages, rather than tips, an amount designated as a "service charge" must be mandatory. *Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1351 (S.D. Fla. 2018) (collecting cases) ("Based on the foregoing authority, the Court finds that for a service charge to qualify as a "commission" for purposes of Section 207(i), ***the customer must be required to pay it***. If payment of a service charge is within the customer's discretion, it is not a 'commission,' it is a 'gratuity' or 'tip.'") (emphasis added, internal citation omitted); *Lalic v. CG RYC, LLC*, 2018 WL 5098983, at *6 (S.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 5098883 (S.D. Fla. Aug. 29, 2018) ("Generally speaking a service charge is a 'tip' if the customer retains discretion over its payment, and is a "commission" if the customer is **required** to pay it.") (citation omitted) (emphasis added); *see also Alban v. 2K Clevelander LLC*, 2018 WL 4859068, at *4 (S.D. Fla. Aug. 28, 2018) (where plaintiff adduced evidence that service charge could be removed by managers at customer's request, and Defendant disputed same, genuine issue of fact as to whether it was a "commission" or a "tip" precluded summary judgment for employer); *Shehata v. Sobe Miami, LLC*, 2018 WL 2995603, at *2-4 (S.D. Fla.

12

June 14, 2018) (denying employer's motion for summary judgment because a genuine issue of material fact existed as to whether service charge was mandatory or discretionary); *Virgin v. Escalante-Black Diamond Golf Club, LLC*, 2014 WL 12591472, at *3 (M.D. Fla. Aug. 4, 2014) (same).

The material issue in all of the aforementioned decisions turned on was not whether the charge was **always added** to every bill initially, as it was in each of these cases, but whether the customers' payment of same was mandatory (or whether he or she could elect not to pay the charge). *See id., see also Nascembeni v. Quayside Place Partners, LLP*, 2010 WL 2351467, at *2 (S.D. Fla. June 11, 2010) (analysis as to whether service charge was "mandatory" hinged on whether the charge "was **non-negotiable**, in other words, the ... customers had **no** discretion as to whether to pay the service charge or not") (emphasis added). While the District Court acknowledged those decisions, it ignored their plain language. Taken to its logical conclusion, the District Court's holding would require summary judgment for the employer in virtually all cases in which the employer refers to customers' gratuities as a "service charge," as here, even where there is ample evidence that no customer was ever actually required to pay a supposedly mandatory service charge. The law precludes such an absurd result where an employer fails to demonstrate the pre-requisites for demonstrating that gratuities are a "service charge," as here.

13

Here, the record is replete with undisputed testimony, including from Appellee's own corporate representative, that Appellee's employees removed "service charges" if guests were unhappy with the service, and that they routinely did so when customers requested such removal (or reduction). Indeed, at least one employee who removed "service charges" testified that he understood that it was part of his job to do so if necessary to please a customer, and that he did so for that reason. Moreover, Appellee's own documents are replete with **hundreds** of examples where "service charges" were removed during the time period at issue in this case. Appellee's own corporate representative, in reviewing non-exhaustive examples from just one six-month period, acknowledged over a dozen such removals of the "service charges." Given these facts, it is undisputed that the amounts Appellee labeled as "service charges" were not mandatory, and thus indistiguishable from a "suggested gratuity" that is initially added to a bill, but that a customer is free to reduce or remove entirely, as was the case in *Soliman, Alban,* and the other cases cited *supra*. Thus, as a matter of law, these monies were tips, and cannot be used to satisfy wage obligations.

### b. <u>Whether Appellee Initially Added The Charge To The Bill or Physically Inputted Its Removal, Is Irrelevant, As Most Suggested Gratuities Are Initially Added</u>.

The District Court also erroneously reasoned that because the purported "service charge" was *initially* added on every bill, it was necessarily mandatory, and subsequent removal was at the discretion of the restaurant. Such circular

reasoning ignores the fact that the charge was removed—as a matter of course—whenever a customer directed that it be removed. There is no evidence that a customer direction to remove the charge was ever refused, or that managers had "discretion" to disobey when a customer wanted to exercise *his or her discretion* to determine a different amount for the charge. At least one district court rightly rejected such an argument, soundly reasoning:

> Defendants appear to argue that the service charge was "mandatory" because it was automatically included on every customer's bill. (*See* Reply at 3 ("It was not the customer's choice to add it. The very fact that [Plaintiff] added it to every customer's bill is proof that it was not added at the customer's discretion.").) This argument is a red herring—whether a service charge constitutes a "commission" does not depend on whether the server is required to include it on the customer's bill, but rather whether the customer is required to pay it.

*Soliman*, 312 F. Supp. 3d at 1351–52 (citations omitted). In *Soliman*, as here, the restaurant added the purported "service charge" to every check, but its customers could, and did, decline to pay the charge, and direct its removal from the bill, at which point the restaurant removed the gratuity from the bill. *Id*. The facts in *Soliman* are virtually identical to those at bar. *See id*. The only difference was that the *Soliman* defendant labeled the gratuity as "suggested" and here it was labeled as "mandatory."[2] But for the label, the practice is identical. The *Soliman* court

---

[2] It is black-letter law that labels are not dispositive under the FLSA. *See* 29 C.F.R. § 778.310 ("mere[] label" of monies as overtime pay, does not establish that monies are, in fact, overtime compensation); 29 C.F.R. § 778.502 (entitled "Artificially labeling part of the regular wages a 'bonus'" and making clear that a

reasoned that, regardless of whether the employer described the charge as mandatory, the important inquiry was not whether it was added to every check, but whether the customer was "***required to pay***" the charge.  *Id.* (emphasis added). There, as here, the answer is no, and the outcome should be the same.  Likewise, here, material issue of fact exists as to whether--given the hundreds of times the charge was removed, and the testimony regarding the reasons for removal--the service charge *in fact* operated as a suggested gratuity, rather than a mandatory one.

The fact that Appellee's employees had to physically input the reduction or deletion in the point of sale system does not logically impact the analysis.  Indeed, even in restaurants that automatically add a "suggested" gratuity to the bill, when the customer directs removal or adjustment of the gratuity, it is the restaurant that must effectuate the change.  That is only a matter of logistics.  Taken to its logical

label is not determinative if inaccurate); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 191 (5th Cir. 2015) ("Labels are easily molded to fit a party's goals and cannot be determinative of whether an employee customarily and regularly receives tips."); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (inquiry as to employee status is not governed by the 'label' put on the relationship by the parties."); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1272 (11th Cir. 2008) (rejecting employer's invitation to accept label placed on employee duties for purposes of exemption analysis, and instead examining actual job duties); *See also Virgin v. Escalante-Black Diamond Golf Club, LLC*, No. 5:13-CV-359-OC-10PRL, 2014 WL 12591472, at *3 (M.D. Fla. Aug. 4, 2014) (issue of fact remained for trial despite employer's labeling of gratuity as "service charge.").

conclusion, the District Court's reasoning dictates that even if Appellee removed every single service charge, and even if it was always at a customer's behest, the charge is still compulsory simply because an employee of the restaurant, and not the customer, was ultimately required to perform the rote task of entering the data into the restaurant's computer system. Common sense dictates that the mere fact that that the restaurant makes the physical adjustment when a customer directs removal or reduction does not render the gratuity mandatory, or demonstrate that it was done at the restaurant's discretion.

For these reasons, the District Court's reliance on *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027 (4th Cir. 2020), for the misplaced proposition that service charges are mandatory when they are included in the bill in the first instance, even when they are admittedly subject to removal, is in error.  The *Tom* decision applied an analytical framework at odds with the sound framework district courts throughout this Circuit have repeatedly employed, and one which ignores both the applicable regulations and common sense.  As stated above, the distinction between whether or not a practice, as a matter of economic reality, complies with the FLSA and its regulations cannot be a matter of semantics, and an employer's self-serving labels cannot be the determining factor between whether an employee wins or loses his or her FLSA case. *See* fn. 2, *supra.*

As the *Soliman* court correctly recognized, to the extent the service charge was removed and customers were not "required" to pay, whether or not same is "compulsory" or "suggested" is, at the very least, a jury question.

Thus, the District Court's conclusion that the "service charge" was "mandatory" as a matter of law, as opposed to finding a triable issue of fact as to whether it operated as a "suggested" gratuity, was in error, and reversal is warranted.

### c. The District Court Improperly Made Factual Inferences In Appellant's Favor When it Determined, As A Matter of Law, The Reasons That Appellee Reduced or Removed Its Service Charges

The R&R, adopted by the District Court, casts Appellee as a victim of its customers' demands, and concludes that Appellee only removed the service charges because it was "between a rock and a hard place." Doc. 140 at ECF p. 23. This factual finding improperly makes inferences in Appellee's favor, in order to reach the conclusion that Appellee (and not its customers) was the decision-maker, and is contrary to well established black-letter summary judgment standards. Under these standards, the District Court was bound to construe the evidence in the light most favorable to Appellants. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986). Significantly, the District Court's misapplication of the summary judgment standard concerns an issue on which Appellee bears the burden of establishing by "clear and affirmative evidence." *See Klinedinst v. Swift*

*Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (quoting *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992).

Appellants provided voluminous evidence that when customers did not want to pay the service charge they could (and did) negotiate or direct the reduction or removal of the charge.  To the extent the reason for the removal/reduction (i.e. whether or not Appellee removed the charge as a matter of course any time a customer directed, or instead made a 'decision' to remove the service charge only after running out of a laundry list of other options), that is likewise an issue of fact for a jury.[3]  Further, it is not clear why Appellee would be "between a rock and a hard place" with respect to reducing or removing a truly mandatory service charge. If the charge were truly mandatory, then removing it, by definition, is an option unavailable to a customer. The response to a request for removal of a mandatory charge is necessarily: "I am sorry, we never remove the service charge.  It is mandatory."

Logic dictates that the restaurant would only feel pressured to remove the charge precisely because it the charge is *not* mandatory, and it is thus possible to comply with the customer's directive to remove or reduce it.  Here, it is undisputed that Appellee reduced or removed service charges in hundreds of instances where

---

[3] Appellants neither suggest nor concede that whether Appellee removed the service charge after offering other options is significant to the inquiry.  Same would merely be suggestive of "negotiation" of the ultimately removed charge, which still renders the charge "negotiable," and therefore not mandatory. *See Nascembeni*, 2010 WL 2351467, at *2.

customers expressed that they did not want to not pay same. No one was made to pay a charge he or she did not want to pay. The fact that Appellee removed over 500 charges because it felt that it "had" to comply with the customer's direction, further supports the conclusion that the customer, and not the Appellee, was the ultimate decision-maker.

This conclusion is further bolstered Appellant Gonzalez's testimony that his manager had no choice but to remove the service charge in response to a customer demand that he do so.  Doc. 140 at ECF p. 23 (citing Appellant Gonzalez's averment that Captain Gabriel Scocco told Plaintiff: "What can I do? They are complaining and I have to remove it."). This directly contradicts the R&R's fact finding that the restaurant "held all the cards" with respect to whether a customer would have to pay the service charge.  *Id.* at ECF p. 24.  Rather, the record demonstrates that Appellee was at the customer's mercy regarding payment of the charge. Plaintiff's affidavits and testimony, as well as the over 500 deductions and reductions of the "mandatory" charge, make clear that once a customer decided not to pay the service charge, Appellee's *de facto* policy was to remove the charge.

### d. Canons of Statutory Construction Require that The Applicable Regulations Be Harmonized And That Each Term Be Given Meaning, Precluding Summary Judgment For Appellee.

Appellee will undoubtedly focus the Court's inquiry on 29 C.F.R. § 531.52, which points out that one consideration in the analysis is "who determines the fee and how much should be provided." However, established canons of statutory

construction do not permit this regulation be read to the exclusion of other related regulations. *See Payne v. Panama Canal Co.*, 607 F.2d 155, 164 (5th Cir. 1979)[4] ("Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole. It is not to be presumed that Congress intended any part of a statute to be without reasonable meaning."); *O'Shannessy v. Doll*, 566 F. Supp. 2d 486, 491 (E.D. Va. 2008) (quoting *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 65 (4th Cir. 1993)) (regulations are subject to the same analytical framework as statutes); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) ("It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law."). As such, it was error for the Court to look to only one regulation on the issue of tips and service charges, without also considering the effect of the plain language of regulations with equal or greater applicability. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (internal quotation marks and citations omitted) (Where a regulation is clear, the Court must "assum[e] that the ordinary meaning" of the regulation's language expresses its purpose and enforce it "according to its terms.").

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

These cannons of construction require that the Court look to 29 C.F.R. §531.55, when making a determination of whether an amount can qualify as a service charge.  This regulation specifically discusses "service charges" in the context of tips, and specifies that only if gratuity is a "compulsory" service charge is it not a tip.  *Id.* at §531.55(a).  If the word "compulsory" were not important or necessary, it would not have been included, and the Court cannot re-write the regulation to erase it. Following the plain language of the regulation, as they must, several cases have found that a "suggested" gratuity does not meet this narrow definition, even though it is the employer in the first instance setting the amount and placing it on the bill, for the customer to dispute only if he or she wants to. *See* Section B.i.a.-b., *supra*. Appellants present evidence that the purportedly mandatory gratuity operated as such a "suggested" gratuity, thus removing it from the definition of a service charge that is "not a tip" and/or which can be used to satisfy wage obligations.

Even if it were proper to make consideration of 29 C.F.R. § 531.52 the exclusive focus of the inquiry, which it is not, the record is replete with evidence demonstrating that, in hundreds of instances, Appellee neither directed the fee nor the amount to be provided.  Here, in every instance where the customer decided not to pay the fee, or some portion thereof, and directed the restaurant that he/she would not pay it, it was reduced or removed.  In all of those instances, it was

22

inarguably the customer who decided the amount of the service charge that would be paid, if any. Indeed, the record showed over 500 instances demonstrating that customers **did** have such discretion, and that when they did not want to pay the charge, they did not do so. Summary judgment should have been entered for Plaintiff on this issue, based on the voluminous authority supporting Plaintiffs' position, including many cases cited in the R&R. At the very least, whether or not the restaurant's actual practice – of removing or reducing service charges in every instance in which a guest directed same –  constituted a mandatory gratuity, or a suggested one, should be a matter for the jury to decide.

To the extent the Court focuses on the question of who determines the amount of the charge, the R&R's characterization of Appellee as "decision-maker" makes factual inferences about the nature of and reasons for the removals, which are also determinations that must be left to a jury.

### ii. Appellee Swore Under Penalty of Perjury, To Its Substantial Benefit, That The Amounts At Issue Are Tips, *Not* Gross Receipts, and Is Estopped  From Claiming Otherwise.

Appellee affirmatively—**under penalty of perjury**—previously claimed that the amounts it now seeks to label as "service charges" were employee tips, and consequently obtained a *credit* for such amounts on its taxes.  Notably, the section of the tax form on which Appellee reported the amounts at issue as tips, specifically directs that an employer should "[e]nter the **tips** received by employees for services on which you paid or incurred employer social security and

23

Medicare taxes during the tax year. **Include tips received from customers for providing, delivering, or serving food or beverages** for consumption if tipping of employees for delivering or serving food or beverages is customary."[5]

Appellee expressly designated the monies at issue as "tips," and disavowed their status as part of its gross receipts, in its tax filings, sworn under oath and submitted under penalty of perjury. As a result of its categorization of such monies as tips, Appellee reaped great financial gain, in the form of drastically reduced taxable gross income. As such, it is estopped from taking a contrary position now to its advantage and Plaintiffs' disadvantage, as a matter of law.

As the Supreme Court recognizes, "[c]ourts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). While the *New Hampshire* court set forth three factors that it considered in determining that the doctrine was applicable, it

---

[5] That Appellee declared the amounts at issue as tips for which it claimed a benefit, and not in its "gross receipts" on its taxes is not surprising, because Appellee also treated the purported "service charges" as "tips," rather than "wages," on employees' paychecks and W-2s. This classification, too, militates in favor of the amounts being considered tips rather than service charges. *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 929 (S.D.N.Y. 2013) ("...it is reasonable to treat exclusion of payments from gross receipts as indicating that they are not service charges."); *Prusin v. Canton's Pearls, LLC*, 2017 WL 5126156, at *8 (D. Md. Nov. 6, 2017) ("the fact that Appellees recorded mandatory gratuities as if they were voluntary tips for employee tax withholding purposes, while simultaneously failing to record those same charges as part of [its] gross receipts for tax purposes, clearly indicates that they were at all times viewed as income solely of the employee not the employer.").

specifically noted that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. Two of the three factors the Court considered were: (1) whether the party took a clearly inconsistent position in its prior statement under oath; and (2) whether the party asserting the inconsistent position would gain an unfair advantage, **or** the opposing party would suffer an unfair detriment, if the asserting party were not estopped.[6] *Id.* at 750-51 (emphasis added). The Eleventh Circuit likewise recognizes the doctrine of judicial estoppel, and typically applies a two-part analysis: (1) whether the party took a prior inconsistent position under oath; and (2) whether the party's intent is to make a mockery of the judicial system. *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1182 (11th Cir. 2017). The District Court was required, but failed, to consider all facts and circumstances when reaching a conclusion as to the second factor. *Id.* at 1176. A proper analysis required the District Court to "look to factors such as the [party's] level of sophistication, his explanation for the omission, whether he subsequently corrected the [statement – in that case, bankruptcy disclosures], and any action taken by [a prior court – in that case the bankruptcy court] concerning the nondisclosure. process. *Id.* at 1176-1177. It did not do so.

While this Court has not directly confronted the issue of the application of judicial estoppel or the related "quasi-estoppel" to tax and administrative filings, it

---

[6] The third factor considered, not applicable here, was "whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.* at 750.

is well established that the doctrine of judicial estoppel applies equally where the prior statements were made to administrative agencies. *See Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997) (citing cases and applying judicial estoppel to employment discrimination claim based on position taken in prior Social Security Administration disability claim); *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 604 (9th Cir. 1996) (applying judicial estoppel to age discrimination claim based on position taken in prior workers compensation claim) ("the truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law") (citation omitted.)). Some courts refer to this as "quasi-estoppel." *See Matter of Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991) (noting that "[o]ne form of estoppel, "quasi estoppel," forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects" and holding that prior tax treatment of monies in tax return precluded an inconsistent treatment in later proceeding); *In re Robb,* 23 F.3d 895, 898–99 (4th Cir.1994) (invoking "quasi-estoppel" to estop party from asserting a position in judicial proceedings different than what was reported on income tax returns.)

Here, Appellee made multiple inconsistent statements under oath in each year of its tax filings, and averred that monies were "tips" which it now seeks to

26

oppositely classify as "gross receipts" and explicitly disclaims were "tips." Further, it is clear that Appellee benefitted from its sworn statements in this regard, because it avoided paying wage taxes on hundreds of thousands of dollars. If it is permitted to do an about face and now classify the same amounts as its gross receipts, it will gain yet another advantage by disclaiming that the monies are tips, because it will avoid the necessary implications of that classification for purposes of the FLSA. This is precisely the type of situation estoppel exists to prevent.

As to whether Appellee's inconsistent statements are intended to make a mockery of the judicial system, weighing the factors enumerated by this Court in *Slater*, it is clear that they are. Specifically, Appellee is a sophisticated business entity, it has offered ***no*** explanation for its prior inconsistent statement under oath, and it has not corrected its tax filings to date. Moreover, while a court has not relied on the prior statement, the IRS did, and Appellee now asks this Court to ignore its prior sworn statement in favor of a new, opposite, and more convenient sworn position. Accepting this position would make a mockery of this Court and the judicial system. Appellee cannot be permitted to have its cake, and eat it, too, by demanding that the Court ignore its prior inconsistent sworn statement on exactly the topic at bar.

### iii. *Compere* Is Distinguishable, And Does Not Control the Outcome Here.

Appellants anticipate that Appellee will argue that *Compere* requires a finding in Appellee's favor.  Not so.  The facts in the instant matter are materially distinguishable from those considered in *Compere*.  Specifically, unlike the case at bar, *Compere* did not involve: (1) an employer that removed or reduced service charges **over 550 times** during the time period at issue; (2) record evidence that once a customer directed removal or reduction of a "service charge" the manager *always* removed it, and lacked discretion to do anything but remove or reduce it in all instances in which a customer directed same; (3) an employer that indisputably reported, under oath, the monies at issue as "*tips*," and specifically disclaimed that the monies were "gross receipts" on its taxes, thereby reaping significant financial benefit; and/or (4) an employer which affirmatively reported both the "service charges" and other amounts which it acknowledges were tips as "tips" on employee paychecks and W-2s, rather than as wages.  Given these stark material factual differences, *Compere* is easily distinguished from the case at bar and does not dictate the result in this case.

In *Compere*, there is no indication as to how often service charges were removed when a customer was dissatisfied.  *See Compere,* generally. Regardless, there exists no definition of the word "compulsory" which permits hundreds of

28

customer-directed removals and reductions to fall within its scope.[7] Here, it is it is undisputed that, if the customer did not want to pay the charge, he or she was never required to do so.

Moreover, the *Compere* court found significant the regulation noting that "whether a tip is to be given, and its amount, are matters determined solely by the customer." As discussed *supra*, it is improper to consider that regulation outside of the context of, and to the exclusion of, related regulations distinguishing "tips" from "service charges." *See* Section B.i.d., *supra*. However, even a focus on this regulation does not require a finding for Appellee here. Specifically, because ample evidence supports a finding that Appellee's "service charge" operated as a "suggested gratuity," and that the "service charge" was always removed when a customer directed its removal, the customer **was** the sole determining factor as to the amount of tip that would actually be paid into the pool. Even to the extent the

---

[7] A similar argument rightly raised an eyebrow in *Alban v. 2K Clevelander LLC*, No. 17-CV-23923, 2018 WL 4859068, at *5 (S.D. Fla. Aug. 28, 2018) ("Defendant has adduced evidence in support of its contention that the charge was mandatory; specifically, that the service charge was built in to each customer's check, and only a supervisor or manager could remove it. In so admitting, defense counsel argued that something less than absolute application of the service charge still qualifies it as mandatory, not discretionary, an argument advanced without support in law or evidence that might establish how often the service charge was in fact waived."). Here, there is evidence that the service charge was removed or reduced hundreds of times, a fact which Appellants respectfully submit renders Appellee's argument that the charge was "mandatory" erroneous as a matter of law.

majority of customers tipped the suggested amount, that does not transform the suggested gratuity into a "compulsory" one, because the customer remained the ultimate decision-maker.

Notably, *Compere* goes on to distinguish a tip from a "compulsory service charge" as described in 29 C.F.R. § 531.55. *Compere,* 28 F.4th at 1187-89. But it nonetheless held that the amounts at issue in that case constituted a service charge, rather than a tip. *Id.* In so doing, it undertook no analysis of the term "compulsory"– possibly because the parties' briefing focused almost entirely on the "gross receipt" issue. Unlike here, whether or not the charge was "compulsory" does not appear to be point of the parties' contention in *Compere*. Thus, the *Compere* Court appears not to have considered (as it did not mention) *Soliman, Lalic, Nascembeni*, or the other cases cited above. Instead, it focused on whether the customer determined the amount to pay, and found that the manner in which the service charge operated in that case satisfied the regulations. *Id.* at 1189. Appellants disagree with that holding, because even in that case, there was record evidence that managers had certain discretion to remove service charges, rendering them something less than mandatory.

However, this Court need not quibble with *Compere's* analysis to reach a statutorily sound result in this case. *Compere's* reasoning regarding the removal of "service charges" was rooted in the notion that it was the managers who had the

ultimate discretion as to whether the amounts were ultimately charged. *Id*. at 1188. The *Compere* court thus found it "irrelevant" that managers would sometimes remove the service charge for a dissatisfied customer, because "the customers had no ability to determine on their own whether they would pay the service charge." *Id*. Here, the opposite is true. The record is replete with evidence, including testimony from managers and servers, that when a customer directed that the "service charge" would not be paid, it was always removed. Unlike *Compere*, here it is undisputed that Appellee's managers lacked discretion to decide whether or not to remove the charge if/when the customer directed its removal. As Mr. Gonzalez' manager told him: "what can I do? They are complaining and I have to remove it." When the customer complained, it was not a matter of manager discretion, it was a matter of effecting the customer's directive. The customer owned the decision as to how much gratuity to pay, as demonstrated by over 500 removals or reductions of "service charges," a critical fact not present in *Compere.*

*Compere* also held that gratuities need not be reported in taxes to be deemed part of gross receipts. While Appellants disagree with that position for the reasons set forth below, it is not dispositive here. Here, Appellee affirmatively reported, under penalty of perjury, the amounts as "tips" for which it received a credit. In so doing, Appellee disclaimed the amounts as issue as "gross receipts" in the same

31

sworn filing, and reported the income in all respects as tips with respect to employee wages (so that the employees paid taxes on them as part of the employees' gross receipts).  As such, *Compere* is factually inapposite.  Here, unlike the employer in *Compere*, the record is indisputable that Appellee made affirmative representations, reaped the benefits of same, and is consequently estopped it from now taking the opposite position here. *See* Section B.ii. *supra.*

The facts in this case render it different from *Compere*, and the result in that case cannot dictate the outcome here.

### iv.  The Purported "Service Charges" at Issue Did Not Become Part of "Gross Receipts" Merely Through Use of Appellee's Point of Sale System, And Thus May Not Be Used To Satisfy Minimum <u>Wage Obligations</u>.

Appellants argued below that even if Appellee was not judicially estopped from claiming that the monies at issue were anything other than tips, summary judgment in the restaurant's favor nonetheless was improper because the monies at issue were not recorded in Appellee's gross receipts for tax purposes.  Appellant recognizes that the *Compere* court recently held that such tax reporting is unnecessary, and that monies become part of gross receipts simply by being collected in the point of sale system in the first instance.[8] 28 F.4th at 1188 at fn.

---

[8] Appellants note that the *Compere* Court acknowledged the requirement that the monies become "gross receipts" in order to be considered a "service charge." *Compere*, at 1187-88.  For this reason, Appellants do not brief here their arguments

13. Appellant strongly disagrees with this holding, and so addresses it here, in the hopes that the Court might revisit this aspect of the *Compere* decision, even though not necessary to a finding in Appellant's favor here.

The holding in *Compere* renders meaningless the requirement to include monies in gross receipts, and is contrary to well-reasoned case law reaching a contrary conclusion. *See Prusin,* 2017 WL 5126156, at *7–10 (failure to include service charges in gross receipts for tax purposes was fatal to employer's claim that such charges satisfy minimum wage and overtime requirements, agreeing that "the weight of authority supports [p]laintiff's position[,]" and granting summary judgment to plaintiffs as to minimum wage and overtime claims); *Hart,* 967 F. Supp. at 929-30 (necessarily requiring that service charges have been treated as gross receipts for tax purposes in its reasoning that "[r]equiring that service charges pass through the employer's gross receipts guarantees that the employer takes responsibility for its employees' wages, and effectively guarantees that such mandatory deductions [for wage taxes] are taken. By contrast, where customers pay employees directly, and the employer is left out of the payment process, there is no assurance that such deductions will be taken."); *Reich v. Priba Corp.*, 890 F. Supp. 586, 594-595 (N.D. Tex. 1995) (finding as a material fact that the employer

---

supporting this position, set forth in their objections to the R&R. However, if Appellee argues that an amount not recorded in "gross receipts" can be a service charge, Appellee reserves the right to address this flawed position as it did below.

"**reports** as gross receipts only 20% of the fee … [t]he remaining 80% is recorded as a liability owed the individual entertainer" and holding that "[t]he fact that all of the… fees are not **reported as** gross receipts is fatal to [the employer's] claim that the tips are more properly classified as wages.") (emphasis added); *Gardner v. Country Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556, at *20 (D.S.C. Dec. 3, 2015) ("[W]hat matters is not just whether the Appellee recorded the amount of money received in service charges, but whether that money was treated as having been received by [Appellee] for accounting purposes, tax purposes, etc.") (citation omitted).

The *Prusin* court, in particular, thoroughly and correctly analyzed a nearly identical practice to that of Appellee here, and held they did not.  As the *Prusin* court explained:

> There is no dispute that Defendants recorded all mandatory gratuities and voluntary tips in DSSD reports and in a separate internal report labeled "Transaction Detail by Account," which was an aggregation of all the voluntary tips and mandatory gratuities received over the course of a given year. However, the mere fact that Appellees maintained a record of the mandatory gratuities received by *employees* does not mean that those charges ever became part of *Defendants'* gross receipts—they did not.

2017 WL 5126156, at *8 (citing *Gardner,* 2015 WL 7783556, at *20).

A conclusion contrary to contrary ignores virtually all applicable black-letter law and vitiates the FLSA's dictate that an employer seeking to take a tip-credit

must first pay a minimum hourly direct wage separate and apart from amounts attributable to customer tips. Indeed, if this were not the case, then any restaurant that collects monies which are undisputedly credit card tips and distributes them to employees could be said to be paying employees out of its own "receipts" simply because it processed the credit card transaction and then "distributed" the monies to its employees. Of course, an employer's collection of such monies through credit card transactions does not make them a part of the employer's gross receipts, nor change their character as the property of the employee. *See* 29 U.S.C. § 203(m)(2)(B) (employers may not use employee tips for any purpose); *Barcellona v. Tiffany Eng. Pub, Inc.,* 597 F.2d 464, 467 (5th Cir. 1979) (tips are employee property which employer may not use to satisfy wage obligations). *See also McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010) ("Where tips are charged on a credit card, the tips due the employee must be paid to the employee not later than the next regular pay day and may not be held by the employer while the employer is waiting to be reimbursed by the credit card company.") (quoting Wage–Hour Opinion Letter FLSA2006–1 (Jan. 13, 2006) (citations omitted)); *accord Myers v. Copper Cellar Corp.,* 192 F.3d 546, 553 (6th Cir. 1999); *Acosta v. Osaka Japan Rest., Inc.*, No. CV 17-1018, 2018 WL 3397337, at *10 (E.D. Pa. July 12, 2018) (employer was not entitled to retain portion of credit card tips exceeding actual credit card processing fees).

Including this requirement ensures that employers are paying employee wages out of its own money, and not out of money that is treated as employee tips.

Nor does this impose an "additional recordkeeping requirement" as the *Compere* Court suggested. *Id.* at 1188. Rather, all that is required of an employer who seeks to use customer gratuities to satisfy its obligation to pay employee direct wages, is that it actually treat those monies as its own income for ***all*** purposes.  If an employer has taken possession of the "service charges" as more than just a pass-through as it would with any credit card tip, then it should not be burdensome or a "recordkeeping requirement" to report the monies as "receipts" in tax filings. Rather, the filings are merely evidence of whether the employer actually treated the monies as "receipts."

Appellants thus respectfully disagree with the *Compere* court's holding as to the meaning it assigns to the term "gross receipts" in the context of this regulation. Thus, even if Appellee were not estopped from claiming that the gratuities at issue constitute "service charges," its failure to record the monies in its gross receipts for tax purposes should be fatal to its position here.

## CONCLUSION

Appellee's purported "service charge" was not mandatory, and therefore was indistinguishable from a suggested gratuity.  These charges were purposely excluded from Appellee's gross receipts and designated as tips in sworn filings,

36

employee paystubs, and W2s, to Appellee's great benefit.  Moreover, in reaching its decision to grant summary judgment to Appellee, the District Court improperly strained to make factual inferences in Appellee's favor.  For all of these reasons, the District Court erred in granting summary judgment for Appellee in this matter. Appellant respectfully requests that this Court REVERSE and REMAND this matter with instructions to enter summary judgment as to liability in Appellant's favor; or, in the alternative, to REVERSE and REMAND this matter for trial to resolve the factual issue of whether the charge at issue was mandatory.

Respectfully submitted,

/s/ Angeli Murthy
ANGELI MURTHY
ANDREW R. FRISCH
MORGAN & MORGAN, PA
8151 Peters Rd Ste 4000
Plantation, FL 33324
(954) 318-0268
AMurthy@forthepeople.com
AFrisch@ForThePeople.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 32(g) because it contains 9,058 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that the attached brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

/s/ Angeli Murthy
ANGELI MURTHY
ANDREW R. FRISCH
MORGAN & MORGAN, PA
8151 Peters Rd Ste 4000
Plantation, FL 33324
(954) 318-0268
AMurthy@forthepeople.com
AFrisch@ForThePeople.com

*Counsel for Plaintiffs-Appellants*

38

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit on July 1, 2022 using CM/ECF, which then served such filing upon the following registered counsel of record for Defendant-Appellee:

Andrew Zelmanowitz
Caitlin Marie Trowbridge
Berger Singerman, LLP
201 E Las Olas Blvd Ste 1500
Fort Lauderdale, FL 33301
(954) 525-9900
azelman@bergersingerman.com
ctrowbridge@bergersingerman.com