NO. 22-11325-JJ

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**ISRAEL ROSELL and ROBERTO
GONZALEZ, for themselves and on
behalf of those similarly situated,**

**Plaintiffs/Appellants,**

**v.**

**VMSB, LLC d/b/a GIANNI'S and
CASA CASUARINA, a Florida
Limited Liability Company,**

**Defendant/Appellee.**

**On Appeal from the United States District Court
for the Southern District of Florida**

---

### APPELLEE'S ANSWER BRIEF

---

ANDREW B. ZELMANOWITZ, ESQ.
Florida Bar No. 74202
BERGER SINGERMAN LLP
201 East Las Olas Boulevard, Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872
Email: Azelman@bergersingerman.com
Counsel for Defendant/Appellee

No. 22-11325, *Israel Rosell, et al. v. VMSB, LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-1, Defendant-Appellee certify that the following persons or entities may

have an interest in the outcome of this appeal:

1.  Alcivar, Jose - Collective Plaintiff/Appellant

2.  Ayala, Valentina - Collective Plaintiff/Appellant

3.  Bekkali, Younes - Collective Plaintiff/Appellant

4.  Braha, Jack - owns .55% interest in Versace SB Realty, LLC

5.  Berger Singerman LLP, Counsel for Appellee

6.  Chow, Allan - Collective Plaintiff/Appellant

7.  Claude, Andre Fafard - Collective Plaintiff/Appellant

8.  Faria, Daniel - Collective Plaintiff/Appellant

9.  Fernandez, Roberto - Collective Plaintiff/Appellant

10. Frisch, Esq., Andrew R. - Counsel for Appellants

11. Garcia, Rocio Del Moral - Collective Plaintiff/Appellant

12. Gindi, Eli - owns 34.3% interest in Versace SB Realty, LLC

13. Gindi, Jeffrey - owns 34.3% interest in Versace SB Realty, LLC

14. Gonzalez, Renzo A. - Collective Plaintiff/Appellant

15. Gonzalez, Richard – Collective Plaintiff/Appellant

16. Gonzalez, Roberto - Named Plaintiff/Appellant

17. Kaiser, Tracey - Collective Plaintiff/Appellant

18. Labrada, Ernesto - Collective Plaintiff/Appellant

19. Lopez, Milka - Collective Plaintiff/Appellant

20. Lyles, Sabrina - Collective Plaintiff/Appellant

21. Mamani, Felicia - Collective Plaintiff/Appellant

22. Morgan & Morgan, P.A., Counsel for Appellants

23. Murthy, Esq., Angeli - Counsel for Appellants

24. Nakash Properties, LLC - owns 97% interest in Nakash Casa, LLC

25. Pallais, Lorie - Collective Plaintiff/Appellant

26. Ramirez, Jhorvid - Collective Plaintiff/Appellant

27. Richter, Nestor - Collective Plaintiff/Appellant

28. Rincon-Duarte, Juan Luis - Collective Plaintiff/Appellant

29. Rincon, Juan - Collective Plaintiff/Appellant

30. Rosell, Israel - Named Plaintiff/Appellant

31. Sanchez, Eduardo Martin - Collective Plaintiff/Appellant

32. Stojanoska, Nikolina - Collective Plaintiff/Appellant

33. Stojanovski, Ljupcho - Collective Plaintiff/Appellant

34. The Avi Nakash 2005 Trust – owns 1% interest in Nakash Casa, LLC; owns

    33.33% interest in Nakash Properties, LLC

35. The Joseph Nakash 2005 Trust – owns 1% interest in Nakash Casa, LLC; owns 33.34% interest in Nakash Properties, LLC

36. The Ralph Nakash 2005 Trust – owns 1% interest in Nakash Casa, LLC; owns 33.33% interest in Nakash Properties, LLC

37. Torres, Edwin G. - Magistrate Judge for the Southern District of Florida

38. Trowbridge, Esq., Caitlin M. - Counsel for Appellee

39. Turnbaugh, Katelyn - Collective Plaintiff/Appellant

40. Vdavenka, Piotr - Collective Plaintiff/Appellant

41. Versace SB Realty, LLC – owns 45.4% interest in Appellee VMSB LLC

42. VMSB, LLC - Defendant/Appellee

43. Williams, Kathleen M. - District Judge for the Southern District of Florida

44. Zelmanowitz, Esq., Andrew B. - Counsel for Appellee

Pursuant to Eleventh Circuit Rule 26.1-1 – 26.1-3, Defendant-Appellee, VMSB, LLC, states that it is a privately held limited liability company, and thus, is not publicly trade. VMSB. Nakash Casa, LLC, and Versace SB Realty, LLC, listed above, are members of VMSB, LLC, that collectively own all of its member interest. No publicly held corporation has a 10% or more ownership interest in the company.

Respectfully submitted,

s/ Andrew B. Zelmanowitz
Andrew B. Zelmanowitz
Berger Singerman LLP
201 East Las Olas Blvd, Ste 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
azelman@bergersingerman.com

*Counsel for Defendant-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not desired by Appellee.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT……………………………………………...C1

STATEMENT REGARDING ORAL ARGUMENT………………………………i

TABLE OF CITATIONS.......……………………….……………..iv

STATEMENT OF JURISDICTION………………………………………1

STATEMENT OF THE ISSUES…………………………………………..1

I.    STATEMENT OF THE CASE AND MATERIAL FACTS……….....…1

    A.    STATEMENT OF THE CASE…………………………………1

    B.    STATEMENT OF FACTS……………………………………...3

II.   STANDARD OF REVIEW…………………………………………7

III.  SUMMARY OF ARGUMENT…………………………………………..9

IV.   ARGUMENT…………………………………………………11

    A.    This Court's Decision in *Compere* Controls this Appeal…………..11

    B.    Employees' Estoppel Arguments do not Change the Result Mandated by *Compere*………………………………..15

        1.    The District Court did not Abuse its Discretion by Rejecting Employees' Estoppel Arguments as Untimely……16

        2.    Even if the District Court Considered Appellant's Estoppel Arguments as Timely, the District Court did not Err by Choosing Not to Apply Judicial Estoppel or Quasi-Estoppel Contrary to *Compere*……………………………………17

    a)    *Compere* Dictates the Outcome of the Appeal, Because Equity Must Follow the Law……………..…17

    b)    Judicial Estoppel Does Not Apply……………………19

        i)    The Filing of a Federal Income Tax Return Neither Commences Nor is Part of Judicial or Quasi-Judicial Proceeding……………………...20

        ii)    Restaurant Could not Have Intended to Make a Mockery of the Judicial System, Because Restaurant's Prior Statement was not Made in a Judicial or Quasi-Judicial Proceeding…………22

    c)    The District Court did not Make a Clear Error in Judgment by Failing to Apply Quasi-Estoppel to Determine that the Monies at Issue are Tips…………23

CONCLUSION……………………………………………………..27

CERTIFICATE OF COMPLIANCE……………………………………28

CERTIFICATE OF SERVICE……………………………………….…29

# TABLE OF CITATIONS

**Cases**

*Ajaka v. Brooksamerica Mortg. Corp.,*
   453 F.3d 1339 (11th Cir. 2006)………………………………………………16

*Amtrust Inc. v. Larson*,
   388 F.3d 594 (8th Cir. 2004)……………………………………………19, 21

*Bailey v. Duling*,
   827 N.W.2d 351 (S.D. 2013)…………………………………………………25

*Beavers v. Victorian*,
   38 F. Supp. 3d 1260 (W.D. Okla. 2014)………………………………………...25

*Bott v. J.F. Shea Co., Inc*.,
   299 F.3d 508 (5th Cir. 2002)………………………………………………10

*Cline v. Western Horseman, Inc.*,
   922 F. Supp. 442 (D.Colo.1996)……………………………………………..21

*Compere, et al. v. Nusret Miami, LLC,*
   19-CV-20277, 2020 WL 4464627 (S.D. Fla. May 31, 2020)……………..2, 3, 14

*Compere, et al. v. Nusret Miami, LLC, et al.,*
   28 F.4th 1180 (11th Cir. 2022)…………………………………………*passim*

*Cooper v. Harris*,
   137 S. Ct. 1455 (2017)……………………………………………………….9

*Dockery v. N. Shore Med. Ctr.*,
   909 F. Supp. 1550 (S.D. Fla. 1995)………………………………………..19, 21

*Edwards v. Aetna Life Ins. Co.*,
   690 F.2d 595 (6th Cir. 1982))…………………………………………………22

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*,
   420 F.3d 1317, 1325 (11th Cir. 2005)…………………………………………8, 9

*Hedges v. Dixon Cnty*,
   150 U.S. 182, 192, 14 S. Ct. 71, 37 L.Ed. 1044 (1893)………………………16

*In re Robb*,
   23 F.3d 895 (4th Cir. 1994)……………………………………………..23, 25

*Johnson v. DeSoto Cnty Bd. of Com'rs*,
   72 F.3d 1556 (11th Cir. 1996)……………………………………………18

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
   662 F.3d 1292 (11th Cir. 2011)……………………………….…………..8

*Lane v. Medtronic, Inc.*,
   05-61553-CIV, 2005 WL 8155524 (S.D. Fla. Dec. 15, 2005)………………..18

*Leevson v. Aqualife USA Inc.*,
   770 F. App'x. 577 (2d Cir. 2019)…………………………………………..20

*Lueders v. Arp*,
   321 F. Supp. 3d 968, 977 (D. Neb. 2018)………………………………..26

*Matter of Davidson*,
   947 F.2d 1294 (5th Cir. 1991)………………………………………23, 24, 25

*McFeeley v. Jackson Street Ent., LLC*,
   825 F.3d 235 (4th Cir. 2016)……………………………………….…17

*Muellner v. Mars, Inc.*,
   714 F.Supp. 351 (N.D. Ill. 1989)……………………………………………21

*Nelson, et al. v. MLB Hotel Manager, LLC*,
   2022 WL 2733720 (11th Cir. July 13, 2022)………………………………12, 13
   INSERT

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)………………………………………....16, 18, 20, 22

*Preferred Sites, LLC v. Troup Cnty*,
   296 F.3d 1210, 1220 (11th Cir. 2002)…………………………………………8

*Russell v. Todd*,
    309 U.S. 280, 289 (1940)……………………………………….……………17

*Shook v. United States,*
    713 F.2d 662 (11th Cir. 1983)……………………………………….……….23

*Simo v. Home Health & Hospice Care*,
    906 F. Supp. 714 (D.N.H.1995)…………………………………………...……21

*Simon v. Safelite Glass Corp.*,
    128 F.3d 68 (2d Cir. 1997)……………………………………………….19, 21

*Soliman v. SOBE Miami, LLC,*
    312 F. Supp. 3d 1344 (S.D. Fla. 2018)………………………….………..…..12

*Slater v. United States Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017)……………………………………………..19, 22

*Stephens v. Tolbert,*
    471 F.3d 1173 (11th Cir. 2006)……………………………………………7, 8, 15

*Swilley v. McCain*,
    374 S.W.2d 871, 875-76 (Tex. 1964)……………………………….………..25

*United States v. Howell*,
    231 F.3d 615 (9th Cir. 2000))……………………………………….……..16

*Whitacre P'ship v. Biosignia, Inc.,*
    358 N.C. 1, 18-19, 591 S.E.2d 870, 881-2 (2004)………………………………25

*Williams v. McNeil*,
    557 F.3d 1287 (11th Cir. 2009)…………………………………….……….8, 15, 16

**Statutes**

28 U.S.C. § 1291……………………………………………………….……..1

**Rules**

Fed. R. Civ. P. 56(a)……………………………………………………………7

**Regulations**

26 C.F.R. § 6212……………………………………………………..………..…..20

See 26 C.F.R. § 6213………………………………………………...………..…20

29 C.F.R. § 531.52…………………………………………………...…………17

29 C.F.R. § 531.52(a)……………………………………………………...…..1

29 C.F.R. § 531.55……………………………………………………………..17

29 C.F.R. § 531.55(b)…………………………………………………………13, 17

## STATEMENT OF JURISDICTION

Appellants properly has invoked this Court's jurisdiction to hear their appeal from a final order pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Whether the Restaurant's automatic service charge is a tip under 29 C.F.R. § 531.52(a)?

II.   Whether the Restaurant's treatment of the service charge monies on its federal income tax return has any bearing on the answer to issue 1?

### I.    STATEMENT OF THE CASE AND MATERIAL FACTS

### A.    STATEMENT OF THE CASE

Appellants, Israel Rosell and Roberto Gonzalez (the "Employees"), filed a complaint alleging that Appellee, VMSB, LLC d/b/a Gianni's and d/b/a Casa Casuarina (the "Restaurant"), failed to pay minimum wages and overtime required by the Fair Labor Standards Act ("FLSA"). D.E. 1.[1] On October 15, 2020, Employees filed an Amended Complaint and Demand for Jury Trial (the "Amended Complaint"), adding a claim for recovery of minimum wages under the Florida Minimum Wage Act ("FMWA").[2] The Amended Complaint sets forth three counts: Count I sought recovery of minimum wages pursuant to FLSA;

---

[1] References to the record are cited herein as "D.E. _____ at ____."

[2] The Amended Complaint is the operative pleading in this matter.

1

Count II sought recovery of minimum wages pursuant to the FMWA; and Count III sought overtime pursuant to the FLSA. *See* D.E. 68 at 12-16.

Employees and the Restaurant each filed a Motion for Summary Judgment as to liability on all three counts, and corresponding Statements of Undisputed Material Facts in support of their Motions. *See* D.E. 112, 114; D.E. 111, 113. The District Court issued an order referring the Motions for Summary Judgment to the Magistrate Judge (the "Magistrate"). D.E. 115.

On June 22, 2021, Magistrate Judge Torres issued a Report and Recommendation ("Report') recommending that the Employees' Motion for Summary Judgment (D.E. 112) be denied in its entirety, and recommending that the Restaurant's Motion for Summary Judgment (D.E. 114) be granted as to Counts I and II and denied as to Count III. D.E. 140 at 46. Employees filed their Objections to the Report (the "Objections") on July 6, 2021, setting forth nearly identical arguments as set forth in their Initial Brief. D.E. 143. The Restaurant filed its response to the Employees' Objections on July 20, 2021. D.E. 156. Employees filed their reply to the Restaurant's response on July 28, 2021. D.E. 160.

On March 28, 2022, the district court issued its Order (the "Report Adoption Order")[3] which affirmed and adopted the Magistrate's Report; denied Employees'

---

[3] Ten days before the district court issued its Report Adoption Order, this Court issued its decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022), which affirmed the district court's decision in *Compere v. Nusret Miami,*

2

Motion for Summary Judgment; granted the Restaurant's Motion for Summary Judgment as to Counts I and II; and denied the Restaurant's Motion for Summary Judgment as to Count III. *See* D.E. 164 at 1. In so doing, the district court overruled Employees' Objections. *See id* ("Having conducted a *de novo* review of the portions of the report and recommendation to which Plaintiffs object and a review of the remainder for clear error, Plaintiffs' objections are overruled.").

## B.    STATEMENT OF FACTS

The Restaurant automatically imposed on all customers a fixed percentage of the total sales price of food and beverage as a service charge. D.E. 111-2 at 44:23 – 45:3; 111-4 at 39:25 – 40:3; 111-6 at 43:1-8. The Restaurant disclosed this service charge on its menu: "All prices exclude the 22%[4] service charge and 9% applicable tax." D.E. 111-2 at 50:25 – 51:5. The servers, bartenders, and, if neither were present, a captain, were all required to inform the customer of the automatic service charge upon greeting the customer with the menu and while discussing certain menu items including specials. D.E. 121-14 at ¶ 12; D.E. 121-5 at ¶ 14; D.E. 121-8 at ¶ 4. The Restaurant used point-of-sale software, "TOAST", to input orders and generate customer checks. D.E. 111-6 at 57:12-20; 117-1 at ¶ 16. The

---

*LLC*, 2020 WL 4464627, at *1 (S.D. Fla. May 31, 2020), *aff'd*, 28 F.4th 1180 (11th Cir. 2022), upon which the Magistrate's Report relied.

[4] The service charge was set at 20% from 2015 until August 4, 2017, and then raised to 22%. D.E. 121-4 at ¶ 10.

TOAST system automatically applied the service charge to the customer's check, which is listed on a separate line within the check. D.E. 111-2 at 44:23 – 45:3; D.E. 121-4 at ¶ 11.

The Restaurant's policy prohibited the removal of the service charge from the bill. [5] D.E. 111-10 at ¶ 10; D.E. 121-4 at ¶ 11; D.E. 128-5 at 95:19 – 96:13. Notwithstanding the Restaurant's policy, the service charge was removed by Captains on occasion in response to service issues.[6] D.E. 111-9 at 87:20 – 88:4 Captains were responsible for addressing service issues, including customer complaints, but were supposed to intervene and, if necessary, offer a free drink or dessert, discount on the check, or remove or "comp" an item from the check. D.E. 111-9 at 25:10-25, 87:20 – 88:4; D.E. 111-10 at ¶ 11. Any discount or comp of the check did not affect the service charge, which still applied to the entire food and beverage sales price, pre-discount or comp. D.E. 121-5 at ¶ 12; D.E. 111-9 at 25:10 – 26:5; D.E. 111-6 at 57:12-20.

When a final check is presented to a customer, it contains a separate line to include a discretionary gratuity, or tip. D.E. 111-2 at 45:18 – 46:24; D.E. 111-4 at 16:23 – 18:3. If customers leave gratuity – whether via credit card or cash - the

---

[5] The removal of the service charge was only permitted when an event was reservation and is not relevant to this analysis. D.E. 111-8 at 100:9 – 101:12; 111-6 at 158:17-19; 111-10 at ¶ 9.

[6] Service charges were never reduced or negotiated; Employees present no evidence of any such reduction. D.E. 121-8, at ¶ 7.

Restaurant employee who serviced the guest was under no obligation to share it with colleagues. *Id.*; D.E. 111-4 at 77:16 – 78:1.  Unlike service charges, where the customer did not retain discretion over its payment, nor could the customer determine the recipient of the payment (which went to the Restaurant), both the recipient and the amount of tips were at the discretion of the customer.  D.E. 121-8 at ¶ 8.

The service charge was collected from customers by the Restaurant to be redistributed to front-of-house employees like Employees - servers and bartenders - as part of their total compensation, based on a point-system.[7] D.E. 17-3 at ¶ 6; 17-4 at ¶ 6; D.E. 111-3 at 20:8-14; D.E. 111-4, at 39:25 – 40:14, 77:16 – 78:1; Interrog. Nos. 13, 17. From that collection, ten percent (10%) of the total service charges is kept by the Restaurant (2% of the bill) and 90% of the service charge is to be distributed to the front of house employees, including captains, servers, bartenders, back-servers, bussers. D.E. 111-6, at 61:25 – 63:3; D.E. 117-1 at ¶ 12.

The automatic service charges and credit card discretionary tips received from each customer were maintained through TOAST, and reflect the total daily sales of the Restaurant. The TOAST software separately categorizes and segregates food sales, beverage sales, service charges, and discretionary tips received by servers and bartenders via credit card. D.E. 117-1 at ¶ 18. Managers at the

---

[7] By contrast, discretionary tips received from a customer to an employee were retained by the employee. D.E. 111-4 at 77:16 – 78:1.

Restaurant would use this information compiled by the TOAST system and input it into an excel spreadsheet that tracked the discretionary tips that each server or bartender received from guests as well as the distribution of Service Charges per shift. *Id.* at ¶ 11.

The Restaurant also maintains internal spreadsheets utilized by management to track service charge distributions to front-of-house employees as well as any discretionary tips received by servers or bartenders. *Id.* at ¶ 19; D.E. 121-4 at ¶¶ 14-16; D.E. 111-4 at 99:2 – 101:11; D.E. 111-3 at 37:19 – 39:11.

The Employees were paid biweekly through a combination of hourly base wages ($5.65 per hour) and Restaurant distributions from the mandatory service charges imposed on every customer check, as well as discretionary tips received directly from the customer. D.E. 111-2 at 65:11 – 66:21; D.E. 111-4 at 14:22 – 15:13, 40:15 – 42:17. It is undisputed that the Employees were compensated well in excess of one and one-half times the minimum wage, when combining the direct hourly wages with the redistributed portion of the service charge. D.E. 140, at      ; D.E. 132, at 9.[8]  In fact, during representative time periods, Employees Rosell and Gonzalez were paid between $25.03 and $32.33 per hour (Rosell), and $28.14 and

---

[8] The Florida minimum wage during the relevant time period (November 1, 2017 through January 18, 2019) was $8.10 for 2017, $8.46 per hour for 2018 and 2019; and $8.65 per hour for 2020. Plaintiffs were paid at least one-and-a half times the minimum wage rate ($12.98 / hr) for all hours worked when considering the base wage plus the service charge distribution. D.E. 117-1 at ¶¶ 28 – 29.

$31.62 per hour (Gonzalez), respectively, without considering cash tips that Employees received but did not report or record. D.E. 117-1 at ¶ 29.

## II.    STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1185 (11th Cir. Mar. 18, 2022) (quoting Fed. R. Civ. P. 56(a)).   When the movant properly supports its motion for summary judgment, "the nonmoving party must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Hinson v. Bas*, 927 F.3d 1103, 1115-16 (11th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 774 (11th Cir. 2020). "It is not enough for the moving party to 'merely assert[] that the jury might, and legally could, disbelieve' the moving party's evidence." *Id.* (*quoting Anderson*, 477 U.S. at 252) (internal citation omitted). "The nonmoving

party must present 'affirmative evidence' that would allow a reasonable jury to rule for him." *Id.* (quoting Anderson, 477 U.S. at 257).

District courts have broad discretion in reviewing a magistrate judge's report and recommendation. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009); *Stephens*, 471 F.3d at 1175.

This Court reviews a district court's decision to grant or deny equitable relief for abuse of discretion, underlying questions of law *de novo*, and findings of fact upon which the decision to grant or deny equitable relief was made under the clearly erroneous standard. *Preferred Sites, LLC v. Troup Cnty*, 296 F.3d 1210, 1220 (11th Cir. 2002). Judicial estoppel is an equitable doctrine invoked at a court's discretion, and is reviewed for an abuse of discretion. *See Stephens*, 471 F.3d at 1175; *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005).

A discretionary decision means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). When reviewing for abuse of discretion, the reviewing court will leave undisturbed a district court's ruling unless it finds that the district court has made a clear error of judgment, or has applied the wrong legal standard. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church,*

*Inc.*, 420 F.3d 1317, 1325 (11th Cir. 2005). Under the clearly erroneous standard, the reviewing court may not reverse just because it would have decided the matter differently. *See Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017). A finding that is "plausible" in light of the full record—even if another is equally or more so—must govern. *Id.*

### III.    SUMMARY OF ARGUMENT

This Court should affirm the district court's order granting summary judgment to the Restaurant as to Counts I and II of the Amended Complaint, because it is on all fours with this Court's decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). The Restaurant's automatic service charge was not a tip, because customers did not solely determine whether the service charge was imposed or to whom it was given. The fact that the Restaurant occasionally removed the service charge to address customer dissatisfaction has no bearing on whether it was a tip. The fact that the Restaurant did not record the automatic service charge monies as gross receipts on its federal income tax return was similarly immaterial to whether such service charge was a tip.

Employees failed to raise judicial estoppel and quasi-estoppel prior to the Magistrate's issuance of the Report, instead raising such arguments for the first time in their Objections. The district court did not abuse its discretion by rejecting these estoppel arguments as untimely.

Employees' attempt to reframe the Restaurant's treatment of the service charge on its federal income tax return as issues of estoppel does not change the result mandated by *Compere*. As an equitable remedy/principle, estoppel must follow the law and afford a remedy only under unique circumstances that merit equity. Those circumstances are not present here.

The circumstances of this case preclude application of judicial estoppel or quasi-estoppel as well. Judicial estoppel prevents parties from making a mockery of the judicial system, and requires a party to take two inconsistent positions in judicial or quasi-judicial proceedings. The filing of a federal income tax return is not part of a judicial or quasi-judicial proceeding. As a result, the Restaurant has not taken two positions in separate proceedings, and cannot have formed the intent to make a mockery of the judicial system.

Quasi-estoppel is similarly inapplicable. Quasi-estoppel precludes a party from asserting, **to another's disadvantage**, a right inconsistent with a position it has previously taken. *Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508, 512 (5th Cir. 2002) (bold added). The Restaurant's treatment of the service charge on its federal income tax return had no effect on the Employees. Whether the portion of the service charge the Employees received was "tips" or a "service charge", Employees were required to treat such monies as income on their tax filings.

## IV.    <u>ARGUMENT</u>

**A. This Court's Decision in *Compere* Controls this Appeal.**

This appeal is on all fours with this Court's decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). Just like in *Compere*, if the portion of the Restaurant's automatic service charge distributed to the Employees is properly considered part of the Employees' "regular rate of pay," the Restaurant satisfied its minimum wage obligations under the FLSA, and consequently the FMWA. *Id*. at 1185; *see* D.E. 117-1 at ¶ 29 ($25.03 and $32.33 per hour (Rosell), and $28.14 and $31.62 per hour (Gonzalez)). The portion of the automatic service charge distributed to the Employees is considered part of "regular rate of pay" if the automatic service charge is not a tip. *Id*. at 1186. A "compulsory charge for service … imposed on a customer by an employer's establishment" is not a "tip." *Id*. at 1187.

"[T]he critical feature of a 'tip' is that '[w]hether a tip is to be given, and its amount, are matters determined solely by the customer.'" *Id*. (quoting 29 C.F.R. § 531.52(a)). A tip is presented by a customer "as a gift or gratuity in recognition of some service performed for the customer." *Id*. Just like in *Compere*, the Employees argue that the Restaurant's automatic service charge was not, in fact, mandatory because managers (and/or Captains) had discretion to remove the charges on the bills of dissatisfied customers. *Compare id*. at 1188, *with* Initial Brief at 22. "**It is irrelevant that managers would sometimes remove the service charge for**

**dissatisfied customers,**" as long as customers had no ability to determine on their own whether they would pay the service charge. *Compere*, 28 F.4th at 1188 (bold added). "Even if the restaurant had 'discretion to remove the charges on the bills of dissatisfied customers,' that didn't mean that the customers 'had [the] ability to determine on their own whether they would pay the service charge.'" *Nelson v. MLB Hotel Manager, LLC*, 2022 WL 2733720, at *3 (11th Cir. July 13, 2022) (citing *Compere*, 28 F.4th at 1188).

The Employees attempt to focus on the purported frequency[9] with which the Restaurant removed the service charge as a means of arguing that it operated as merely a "suggested" gratuity. The Employees characterize the automatic service charge as "suggested" to bolster their argument that this appeal is controlled by *Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1351 (S.D. Fla. 2018), not *Compere*. In *Soliman*, the menu expressly declared that the service charge was "suggested" and directed customers to "Please ask your server if you would like this [suggested service charge] to be removed." *Id*. But here, the Restaurant's menu neither characterized its service charge as "suggested" nor invited customers to request its removal. The menu simply stated: "All prices exclude the 20% [or 22%]

---

[9] The Employees go so far as to claim, without any citation to the record, that "in every instance where the customer decided not to pay the fee, or some portion thereof, and directed the restaurant that he/she would not pay for it, it was reduced or removed." Initial Brief at 22. This statement blatantly misrepresents the record.

service charge and 9% applicable tax." D.E. 111-2 at 50:25 – 51:5. No customer could have interpreted this statement as providing merely a "suggested" gratuity, particularly given the fact that by that same logic the customer would have to conclude that the 9% applicable tax was merely "suggested" as well.

The Employees also argue that the automatic service charge was a "tip" because the Restaurant did not report the automatic service charge monies as gross receipts on its federal income tax return, which Employees argue is required by 29 C.F.R. § 531.55(b). *Compere* rejected this argument, and held that the employer's tax forms are irrelevant to determining whether there is a service charge. *Compere*, 28 F.4th at 1187. 29 C.F.R. § 531.55(b) does not require monies to be recorded as gross receipts by an employer for those monies to constitute a service charge. *Id*. at 1187-88. Furthermore, *Compere* held that even if 29 C.F.R. § 531.55(b) required such monies to become part of an employer's gross receipts to be considered a *bona fide* service charge, such requirement is satisfied by the fact that service charge monies went directly to the Restaurant via its TOAST point-of-service system. *See id*. at 1188 n.13; D.E. 117-1 at ¶¶ 11, 18.

Even though the Restaurant has not sought sanctions against the Employees, this Court has made clear that Employees' tip arguments are so foreclosed by *Compere* that they are sanctionable. *See Nelson v. MLB Hotel Manager, LLC*, 2022 WL 2733720, at *4 (11th Cir. July 13, 2022) (Finding that Nelson's arguments

were made in good faith, even though ultimately they were resolved by *Compere*, **because** "[o]ur caselaw—**at least at the time**—was silent." (bold added)). In apparent recognition of this fact, Employees next argue that the Restaurant is estopped[10] from claiming that the automatic service charge is a service charge, not a tip, by virtue of the fact that the Restaurant recorded the Employees' portion of the automatic service charge as "tips" on its federal income tax return.

### B. Employees' Estoppel Arguments do not Change the Result Mandated by Compere.

Employees further argue that the district court erred in granting summary judgment because Restaurant was estopped from taking the position that the monies at issue were a service charge by virtue of the fact that "Appellee affirmatively – **<u>under penalty of perjury</u>** – previously claimed the amounts it now seeks to label as 'service charges' were employee tips." Initial Brief at 23. Employees rely on the doctrines of judicial estoppel and/or quasi-estoppel to support this contention.

Employees failed to raise judicial estoppel or quasi-estoppel in response in their Motion for Summary Judgment or responses to Restaurant's Motion for

---

[10] Applying judicial estoppel and/or quasi-estoppel.

Summary Judgment, which were assigned by the district court to the Magistrate.[11]

D.E. 115. Appellants first raised their judicial estoppel and quasi-estoppel arguments as objections to the Magistrate's Report.[12] *See* D.E. 143 at 16-20. On March 28, 2022, the trial court issued its Order (the "Report Adoption Order") which affirmed and adopted the Magistrate's Report; denied Employees' Motion for Summary Judgment; granted Restaurant's Motion for Summary Judgment as to Counts 1 and 2; and denied Restaurant's Motion for Summary Judgment as to Count 3. *See* D.E. 164. In so doing, the trial court overruled Appellants' objections.[13] *See id* ("Having conducted a *de novo* review of the portions of the report and recommendation to which Plaintiffs object and a review of the remainder for clear error, Plaintiffs' objections are overruled.").

### 1. The District Court did not Abuse its Discretion by Rejecting Employees' Estoppel Arguments as Untimely.

The district court did not abuse its discretion by rejecting Employees' estoppel arguments as untimely. District courts have broad discretion in reviewing

---

[11] In the Report, based in part upon *Compere v. Nusret Miami, LLC*, 2020 WL 4464627, at *1 (S.D. Fla. May 31, 2020), the Magistrate determined that the monies at issue were a service charge. *See* D.E. 140 at 14-17.

[12] In its Response to Plaintiff's Objections to Report and Recommendation on Cross-Motions for Summary Judgment, Appellee argued that the District Court should reject Appellants' estoppel arguments as untimely. *See* D.E. 156 at 8.

[13] The district court did not expressly state whether it declined to consider Employees' judicial estoppel and quasi-estoppel arguments as untimely, or whether it rejected those arguments on substance, or both.

a magistrate judge's report and recommendation. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009); *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006). Judicial estoppel is an equitable doctrine invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Rejection of Employees' estoppel arguments as untimely was well within the district court's range of choice in addressing the Magistrate's Report. A district court does not abuse its discretion to decline to consider arguments not presented to the magistrate. *See Williams*, 557 F.3d at 1291. "'[T]o require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.'" *See id.* at 1292 (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

> **2. Even if The District Court Considered Appellant's Estoppel Arguments Timely, the District Court did not err by Choosing Not to Apply Judicial Estoppel or Quasi-estoppel Contrary to *Compere*.**

> **a) *Compere* Dictates the Outcome of this Appeal, Because Equity Must Follow the Law.**

It is a basic tenet of jurisprudence and the first principle of equity jurisdiction that "equity[14] follows the law." *Hedges v. Dixon Cnty*, 150 U.S. 182, 192 (1893). Wherever the rights or the situation of parties are clearly defined and

---

[14] Estoppel is an equitable remedy or concept. *See Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006).

established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legem* is strictly applicable. *Id*.; *see also*, *Russell v. Todd*, 309 U.S. 280, 289 (1940). The requirement that equitable relief follow the law applies to rules and precedents as well. *See Holland v. Florida*, 560 U.S. 631, 649 (2010).

In adjudicating Employees' FLSA and FMWA claims, the district court had to determine whether the monies at issue constituted tips, as defined by 29 C.F.R. § 531.52, or service charges, as defined by 29 C.F.R. § 531.55. Based upon an extension of the Fourth Circuit's decision in *McFeeley v. Jackson Street Ent., LLC*, 825 F.3d 235 (4th Cir. 2016), Employees argued to the district court that 29 C.F.R. § 531.55(b) required service charges to be included by Restaurant as gross receipts in Restaurant's income tax return to not be considered a tip.

On March 18, 2022, this Court issued its decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). *Compere* held that the employer's tax forms are irrelevant to determining whether there is a service charge. *Id*. at 1187. 29 C.F.R. § 531.55(b) does not require monies to be recorded as gross receipts by an employer for those monies to constitute a service charge. *Id*. at 1187-88. Furthermore, *Compere* held that even if 29 C.F.R. § 531.55(b) required such monies to become part of an employer's gross receipts to be considered a *bona fide* service charge, such requirement is satisfied by the fact that such monies went

17

directly to Restaurant via its TOAST system. *See id*. at 1188 n.13; D.E. 117-1 at ¶¶ 11, 18.

Under the binding precedent rule, district courts must follow the holdings of their court of appeals and the Supreme Court. *See Lane v. Medtronic, Inc.*, 2005 WL 8155524, at *3 (S.D. Fla. Dec. 15, 2005); s*ee also, Johnson v. DeSoto Cnty Bd. of Com'rs*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996). "The binding precedent rule affords a court no such discretion where a higher court has already decided the issue before it." *Johnson*, 72 F.3d at 1559 n.2. In light of this Court's decision in *Compere* 10 days before its issuance of the Report Adoption Order, if the district court determined that *Compere* applied, the district court lacked discretion to apply the equitable remedies/concepts of judicial estoppel and/or quasi-estoppel to reach a result contrary to *Compere*.

### b) Judicial Estoppel Does Not Apply.

Employees argue that judicial estoppel prohibits Restaurant from taking the position that the monies at issue were a service charge, because Restaurant swore to the IRS under oath in its federal income tax return that the monies at issue were tips. Judicial estoppel provides that where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken

by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The purpose of judicial estoppel is to protect the integrity of the judicial process. *Id*. at 749-50. Judicial estoppel is intended to address concerns raised by inconsistent positions taken with courts "that would create 'the perception that either the first or the second court was misled.'" *See id*. at 750.

This Court employs a two-prong test in applying the doctrine of judicial estoppel: (1) whether the party took an inconsistent position under oath in a separate proceeding; and (2) whether the inconsistent positions were calculated to make a mockery of the judicial system. *See Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017).

### i.    The Filing of a Federal Income Tax Return Neither Commences Nor is Part of Judicial or Quasi-judicial Proceeding.

Judicial estoppel is inapplicable in this case, because Restaurant's completion under oath and filing of its federal income tax return did not constitute a separate proceeding. The term "proceeding" in the first prong of the judicial estoppel test means judicial, or at least quasi-judicial proceedings, not administrative applications to agencies. *See Dockery v. N. Shore Med. Ctr.*, 909 F. Supp. 1550, 1558 (S.D. Fla. 1995); *see also*, *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997); *Amtrust Inc. v. Larson*, 388 F.3d 594, 600 (8th Cir. 2004) ("The doctrine of judicial estoppel prevents a party from taking a position

during litigation which is contrary to one taken in a prior judicial or quasi-judicial proceeding.").

An income tax return may be filed with an administrative agency, but such filing neither commences nor is part of an adjudicatory proceeding or even a proceeding.[15] *See Leevson v. Aqualife USA Inc.,* 770 F. App'x. 577, 581 (2d Cir. 2019). In *Leevson*, the Second Circuit addressed whether a party could be judicially estopped based upon statements made to the Internal Revenue Service on a federal income tax return. *See id*. Because "filing tax returns, in the ordinary course, involves neither an adjudicative proceeding nor even a proceeding," the court concluded that judicial estoppel is inapplicable to statements made on an income tax return. *See id*. With respect to a federal income tax return, the point of entry for an adjudicatory proceeding is the issuance of a Notice of Deficiency pursuant to 26 C.F.R. § 6212, which triggers a taxpayer's right to file a petition with the Tax Court for a redetermination of the deficiency. *See* 26 C.F.R. § 6213. The filing of a petition with the Tax Court commences an adjudicatory proceeding regarding the statements in a federal income tax return. *See* 26 C.F.R. Subchapter C, Part II.

Employees cite *Simon* for the proposition that judicial estoppel applies equally where prior statements were made to administrative agencies outside of a

---

[15] Judicial and quasi-judicial proceedings are defined by their adjudicatory function. *See Forrester v. White*, 484 U.S. 219, 226 (1988).

judicial or quasi-judicial proceeding. *See* I.B. at 37 (referring to *Simon* "citing cases and applying judicial estoppel to employment discrimination claim based on position taken in prior Social Security Administration disability claim"). *Simon* cites *Cline v. Western Horseman, Inc*., 922 F. Supp. 442 (D. Colo. 1996), *Simo v. Home Health & Hospice Care*, 906 F. Supp. 714 (D.N.H.1995) and *Muellner v. Mars, Inc.*, 714 F. Supp. 351 (N.D. Ill. 1989) to support the following statement: "In fact, many courts have precluded litigants from advancing positions contrary to statements made in applications for Social Security disability benefits." *Simon*, 128 F.3d at 72. *Cline*, *Simo* and *Muellner*, do not stand for the proposition that judicial estoppel applies to prior statements made to administrative agencies outside of a quasi-judicial proceeding, however. *See Cline,* 922 F. Supp. at 446 (referring to the Administrative Law Judge's prior SSA benefits Decision)*; Simo*, 906 F. Supp. at 721 ("The plaintiff attested to the veracity of each representation, knowing they would be relied upon in the context of a government benefits application process, a quasi-judicial administrative proceeding."); *Muellner*, 906 F. Supp. at 721 (referring to situation confronting the court as "an individual claims disability, through either judicial or quasi-judicial proceedings obtains a single payment or continuing disability benefits, and then seeks reinstatement to his job."). Judicial estoppel is simply inapplicable when the prior statement was not made in a judicial

or quasi-judicial proceeding. *See Dockery*, 909 F. Supp. at 1558; *see also*, *Simon*,

128 F.3d at 72; *Amtrust Inc.*, 388 F.3d at 600.

> ii.  **Restaurant Could not Have Intended to Make a Mockery of the Judicial System, Because Appellee's Prior Statement was not Made in a Judicial or Quasi-Judicial Proceeding.**

Restaurant could not have intended to make a mockery of the judicial

system, because Restaurant has not taken different positions before two courts. The

second element of the judicial estoppel test – whether the inconsistent positions

were calculated to make a mockery of the judicial system – focuses on intent. *See*

*Slater*, 871 F.3d at 1181. "[C]ourts regularly inquire whether the party has

succeeded in persuading a court to accept that party's earlier position, so that

judicial acceptance of an inconsistent position in a later proceeding would create

'the perception that either the first or the second court was misled.'" *New*

*Hampshire*, 532 U.S. at 750 (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595,

599 (6th Cir. 1982)). "Absent success in a prior proceeding, a party's later

inconsistent position introduces no 'risk of inconsistent court determinations,' and

thus poses little threat to judicial integrity." *Id*. at 750–51 (citations omitted). "[T]o

determine whether a plaintiff's inconsistent statements were calculated to make a

mockery of the judicial system, a court should look to all the facts and

circumstances of the particular case." *Slater*, 871 F.3d at 1185.

In this case, Employees cannot establish Restaurant's intent to make a mockery of the judicial system, because Restaurant did not make a prior inconsistent statement to a court or quasi-judicial tribunal. The only position taken by Restaurant before a court or quasi-judicial tribunal is the position taken with the district court below. Because no prior position was taken with a court or quasi-judicial tribunal, judicial estoppel could not prevent Restaurant from taking the position that the monies at issue were a service charge.

###### c) The District Court did not Make a Clear Error in Judgment by Failing to Apply Quasi-Estoppel to Determine that the Monies at Issue are Tips.

Employees also argue that "quasi-estoppel" prevents Restaurant from taking the position that the monies at issue are a service charge, because the monies at issue were not recorded as gross receipts on Restaurant's federal income tax return.[16]

Quasi-estoppel generally arises in two circumstances: (1) in a tax dispute between the tax collector and the taxpayer, *see e.g., Shook v. United States*, 713 F.2d 662, 666 (11th Cir. 1983); and (2) in a bankruptcy dispute in which a debtor is seeking to discharge payments required to be made in a divorce settlement. *See, e.g., Matter of Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991); *In re Robb*, 23 F.3d

---

[16] Employees conflate judicial estoppel and quasi-estoppel as the same principle. *See* I.B. at 26. Judicial estoppel and quasi-estoppel are distinct equitable principles.

895, 898–99 (4th Cir. 1994). Restaurant has found and Employees have cited to no case which applied quasi-estoppel to prohibit a position in a wage and hour dispute based upon a prior position taken on an income tax return.

Employees rely exclusively on *Davidson* and *Robb* as support for application of quasi-estoppel to preclude Restaurant from claiming that the monies at issue are a service charge. *See* I.B. at 26. In *Davidson*, Mr. and Mrs. Davidson entered into a Marital Settlement Agreement, which characterized periodic payments to be made by Mr. Davidson to Mrs. Davidson as representing Mrs. Davidson's share in certain joint real estate venture. 947 F.2d at 1295. The agreement further provided that the payments would be taxable as income to Mrs. Davidson and deductible as to Mr. Davidson. *Id*. Mr. and Mrs. Davidson filed income tax returns for several years based on this understanding. *Id*. at 1296. Mr. Davidson then stopped making payments. *Id*. Mrs. Davidson sought to enforce the terms of their divorce and obtained a judgment in state court. *Id*. Mr. Davidson then filed for Chapter 7 bankruptcy relief, and claimed the periodic payments were a property settlement, not alimony. *Id*. The bankruptcy court agreed and discharged the debt as property settlement. The Fifth Circuit applied quasi-estoppel and reversed. *Id*. at 1297. "Mr. Davidson has accepted the benefits of his agreement: He has taken tax deductions for the payments to Mrs. Davidson. He now tries to escape the bankruptcy effects of his election to treat the payments as alimony." *Id*.

The key factor in reversing was Mrs. Davidson's detrimental reliance by accepting the tax burden of the periodic payments as alimony. *See id*.

In *Robb*, the Fourth Circuit applied quasi-estoppel on the same basic facts as *Davidson*. *See* 23 F.3d at 898–99. Because the former husband and wife characterized the support payments made to the former wife as alimony on their tax returns and accepted the corresponding tax benefits and burdens of such characterization, quasi-estoppel applied. *See id*. at 898-99.

In *Davidson* and *Robb*, the estopped party accepted a benefit (exclusion of support payments made to former spouse from taxable income) for which the party being estopped accepted a corresponding burden (inclusion of support payments received in taxable income). As a result, *Davidson* and *Robb* are consistent with other cases limiting quasi-estoppel to circumstances of privity. *Compare Davidson* 947 F.2d at 1297; *Robb*, 23 F.3d at 898–99, *with Swilley v. McCain*, 374 S.W.2d 871, 875-76 (Tex. 1964); *Beavers v. Victorian*, 38 F. Supp. 3d 1260, 1266 n. 8 (W.D. Okla. 2014) ("estoppel cannot be invoked by a stranger to the transaction"); *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18-19, 591 S.E.2d 870, 881-2 (2004) ("Like equitable estoppel, and unlike judicial estoppel, quasi-estoppel requires mutuality of parties; the doctrine may not be asserted by or against a "stranger" to the transaction that gave rise to the estoppel"); *Bailey v. Duling*, 827 N.W.2d 351, 362 (S.D. 2013) ("Quasi-estoppel is an equitable remedy, applicable

when a party maintains a position inconsistent with a position previously acquiesced in, or of which the party accepted a benefit, and these inconsistent positions are to another's disadvantage."); *Lueders v. Arp*, 321 F. Supp. 3d 968, 977 (D. Neb. 2018). Privity does not exist in this case, because notwithstanding Appellee's alleged exclusion of such monies from gross receipts on its income tax return, and any purported benefit received by Appellee as a result of such exclusion, such exclusion did not result in a corresponding burden on Appellants. Regardless of the treatment of such monies on Appellee's income tax returns, Appellants were required to treat the monies at issue as income. Quasi-estoppel simply does not apply because Appellants were not disadvantaged by Appellee's treatment of the monies at issue on its income tax return.

## **CONCLUSION**

For all of the foregoing reasons, this Court should affirm the District Court's granting of summary judgment for Appellee.

Respectfully submitted,

s/ Andrew B. Zelmanowitz
Andrew B. Zelmanowitz
Berger Singerman LLP
201 East Las Olas Blvd, Ste 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
azelman@bergersingerman.com

*Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,831 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Respectfully submitted,

s/ Andrew B. Zelmanowitz
Andrew B. Zelmanowitz
Berger Singerman LLP
201 East Las Olas Blvd, Ste 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
azelman@bergersingerman.com

*Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certify that a true and correct of the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on August 31, 2022, which then served such filing upon the following registered counsel of record for Plaintiffs-Appellants.

Angeli Murthy
Andrew R. Frisch
Morgan & Morgan, PA
8151 Peters Road, Suite 4000
Plantation, FL 33324
Telephone: (954)318-0268
Amurthy@forthepeople.com
Afrisch@forthepeople.com